**DOLCIN CORP. et al.**

v.

**FEDERAL TRADE COMMISSION.**

No. 11700.

United States Court of Appeals
District of Columbia Circuit.

Argued April 13, 1954.

Decided July 1, 1954.

On Petition for Rehearing in Banc, or, in
the Alternative, for Modification
Feb. 3, 1955.

Writ of Certiorari Denied
April 4, 1955.

See 75 S.Ct. 571.

Stephens, Chief Judge, and Wilbur
K. Miller, Circuit Judge, dissented in
respect to denial of petition for rehearing.

744

Mr. Michael F. Markel, Washington, D. C., with whom Mr. Wayne K. Hill, Washington, D. C., was on the brief, for petitioners.

Mr. John W. Carter, Atty., Federal Trade Commission, of the bar of the Supreme Court of Virginia, Danville, Va., pro hac vice, by special leave of Court, with whom Messrs. Robert B. Dawkins, Asst. Gen. Counsel, Federal Trade Commission, and Donovan Divet, Sp. Atty., Federal Trade Commission, were on the brief, for respondent.

Before BAZELON, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a review of a cease and desist order of the Federal Trade Commission. Petitioners, the Dolcin Corporation and certain of its officers, are engaged in the manufacture of a drug—"Dolcin"—designed primarily to relieve the symptoms of arthritis and rheumatism. Each

"Dolcin" tablet contains 2.8 grains of calcium succinate and 3.7 grains of acetylsalicylic acid (aspirin). Petitioners have repeatedly made far-reaching claims as to the product in their advertisements. The Federal Trade Commission, as a result, issued a complaint in August of 1949. After extensive hearings the trial examiner found that petitioners' advertising representations were in large part incorrect. The Commission affirmed the trial examiner's findings and on the basis of them issued a cease and desist order. In essence this order forbids petitioners from representing that Dolcin (1) is inexpensive; (2) may safely be taken over prolonged periods of time; (3) may safely be taken by persons who are adversely affected by aspirin; (4) will have any effect upon arthritic or rheumatic conditions beyond affording temporary relief of minor aches, pains or fever.[1]

### I.

Petitioners attack the Commission's order on several grounds. The first of these is that they were denied a fair hearing, in that Dolcin was made the subject of a test case to govern the status of all distributors of similar drugs; that the Commission denied petitioners the privilege of revising their advertising by stipulation; and that on the basis of the evidence taken in petitioners' case the Commission entered a cease and desist order against another distributor before it had decided the instant case, thus prejudging the matters in controversy.

The record before us does not establish the claimed unfairness. There is no showing that prior to the issuance of the Commission's complaint the petitioners had purged their advertising of the criticized claims; on the contrary, petitioners contest to this day the restrictions which the Commission then and now seeks to impose. And in any event abandonment of challenged practices does not automatically bar the issuance of a complaint. Eugene Dietzgen Co. v. Federal Trade Commission, 7 Cir., 142 F.2d 321, cert. denied, 1944, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586. The record does show that another case involving "Sural," a similar drug put out by the Norlon Corporation, was the subject of a stipulation between the latter company and the Commission, whereby the medical evidence in the instant case would form part of the record in that case.[2] After the hearing in the present case was completed, petitioners asked for oral argument. The Norlon Company did not. The same trial examiner sat in both cases. He issued

---

1. The Commission's order seeks to restrain petitioners from advertising as to Dolcin—

"(a) that the taking of said preparation will constitute an adequate, effective or reliable treatment for rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition;

"(b) that said preparation will arrest the progress or correct the underlying causes of or will cure, rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition;

"(c) that said preparation will afford any relief of severe aches, pains, and discomforts of rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording temporary relief of minor aches, pains, or fever;

"(d) that the taking of said preparation is an adequate, effective, or reliable treatment for so-called 'growing pains' in children, or that its use will prevent rheumatic fever;

"(e) that said preparation may safely be taken over prolonged periods of time;

"(f) that said preparation may safely be taken by persons adversely affected by aspirin; and

"(g) that said preparation is economical, inexpensive, or of low cost, unless and until the retail selling price, without prescription, of such preparation shall, in truth and in fact, be less than the retail selling price, without prescription, of the only active ingredient contained in said preparation, which is acetylsalicylic acid, commonly known as aspirin."

2. It was not, of course, the whole record: the nature of Norlon's advertising would have to be established.

an Initial Decision in Norlon in January 1952 and a similar Initial Decision in Dolcin in the following month. In May 1952 the Commission issued a final order in Norlon; in June it heard argument in Dolcin, and issued its final order against these petitioners in December. The orders in the two cases were similar.

It may be that petitioners were in some degree prejudiced by the course the Commission took: their oral argument was delivered under the handicap of a fresh precedent rendered on the same medical evidence. But administrative agencies are under congressional mandate to "proceed with reasonable dispatch to conclude any matter presented," [3] and on the facts before us we see no abuse of discretion on the Commission's part in deciding Norlon as soon as it was ready for decision. Petitioners made no timely motion to have the decision in Norlon postponed until after the argument in Dolcin, nor did they move for any definite form of relief after Norlon came down. The occurrences here do not establish bias or disqualification on the part of the Commission; certainly nothing is shown sufficient to invalidate the hearing and the subsequent decision. Cf. Federal Trade Commission v. Cement Institute, 1948, 333 U.S. 683, 700, 68 S.Ct. 793, 92 L.Ed. 1009; United States v. Morgan, 1941, 313 U.S. 409, 420–421, 61 S.Ct. 999, 85 L.Ed. 1429.

## II.

Petitioners also complain of errors by the trial examiner in the conduct of the hearing. One grievance is that they attempted to cross-examine some of the Commission's expert medical witnesses concerning statements made by other experts writing in various medical publications. The trial examiner would not allow the questions. Implicit in his rul-

ings was the theory that medical publications were hearsay which could be used upon cross-examination only if the witness had relied upon them in direct examination. Petitioners contend this was an erroneous restriction on the scope of cross-examination and that it warrants reversal. They rely primarily on Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63.

In that case the petitioner (Pinkus) had sent representations through the mail about "Dr. Phillips' Kelp-I-Dine Reducing Plan." The Postmaster General, after a hearing, found these representations to be fraudulent and issued an order restricting petitioner's use of the mails. At the hearing doctors had testified as experts for the Post Office Department as to the efficacy of Kelp-I-Dine. They based their opinions, at least in part, upon their reading of medical textbooks and publications. Petitioner sought to cross-examine these doctors concerning statements in other medical books. The questions were not allowed. The Supreme Court, as a result, held that the Postmaster General's order should not be enforced by the courts, saying:

"It certainly is illogical, if not actually unfair, to permit witnesses to give expert opinions based on book knowledge, and then deprive the party challenging such evidence of all opportunity to interrogate them about divergent opinions expressed in other reputable books." 338 U.S. at page 275, 70 S.Ct. at page 114.

Reilly v. Pinkus, we think, stands for the general proposition that an expert witness who bases an opinion to a significant degree upon his reading may be cross-examined as to that opinion by reference to other reputable works in his field.[4] It is not necessary for the wit-

3. Administrative Procedure Act, § 6(a), 5 U.S.C.A. § 1005(a).

4. The Court does not say how the authority of those works is to be determined. It seems clear from the facts given in the opinion that it is unnecessary for the witness himself to recognize

the authority of the work [but see Lawrence v. Nutter, 4 Cir., 1953, 203 F.2d 540] or even to have read it [but see Shaw v. Duncan, 10 Cir., 1952, 194 F.2d 779]. We think the authority of the work is for the presiding officer to decide. And we think he should have a broad discretion in determining what—and how

ness to have relied in his testimony upon the particular authority the cross-examiner seeks to use.[5] And we do not think that the Court limited its ruling to cases involving fraud.[6] The Reilly case also holds that the trial examiner has broad discretion to determine the extent of the cross-examination on written authorities.[7] He probably has, in some cases, discretion to determine whether there should be any such cross-examination at all. But it is error to exclude such questions by blanket rule, without more.

■ The examiner thus erred in the instant case. The question remains whether reversal is warranted. In deciding Reilly v. Pinkus the Supreme Court could hardly have intended to bring about reversal of every administrative hearing in which the trial examiner improperly excluded some questions on cross-examination—or in which some other error was made as to the admission or exclusion of evidence. The Court said:

"The power to refuse enforcement of orders for error in regard to evidence should be sparingly exercised. A large amount of discretion in the conduct of a hearing is necessarily reposed in an administrative agency. And what we have said is not to be taken as removing this discretion or as a compulsory opening of the gates for floods of medical volumes, even where shown to be au-

thoritative." 338 U.S. at page 276, 70 S.Ct. at page 114.

The decision of the Postmaster General was upset in that case with good reason. The works on which the cross-examiner relied apparently were directly relevant to the central issue of the case and were in direct conflict with the Post Office Department's position. As a result they were of great importance to the petitioner. Had the witness been confronted with them and had the conflict been demonstrated to the trier of fact there might well have been a different result. This is especially so as fraud—the good or bad faith of the petitioner—was at issue in the case. The question was not whether petitioner's representations were correct, but whether or not he reasonably considered them correct. See 338 U.S. at page 276, 70 S.Ct. 110. A single authority in agreement with petitioner might well be decisive on that issue—although it might be far from proving that the representations were correct. Moreover, on the basis of the hearings an order of extreme severity—restricting petitioner's use of the mails—was imposed. It was with these factors present that the Supreme Court allowed the order of the Postmaster General to be overturned. We think it did so because under the circumstances of the case the restriction of cross-examination denied the petitioner substantial justice.

much—evidence may be presented on that question.

5. It has long been accepted that an expert witness may be cross-examined as to an authority he relied upon for his testimony. Garfield Memorial Hospital v. Marshall, 1953, 92 U.S.App.D.C. 234, 204 F.2d 721; see Wigmore, Evidence § 1700(b) (3d ed. 1940). But before Reilly v. Pinkus the Circuits were split on whether or not works on which the witness had not relied could be used in cross-examination. Allowed: Victor American Fuel Co. v. Tomljanovich, 1 Cir., 1916, 232 F. 662, certiorari denied, 1916, 242 U.S. 643, 37 S.Ct. 212, 61 L. Ed. 542. Not allowed: E. I. DuPont de Nemours & Co. v. White, 3 Cir., 1925, 8 F.2d 5; Western Union Telegraph Co. v.

Ammann, 3 Cir., 1924, 296 F. 453. Compare Yarn v. Ft. Dodge D. M. & S. R. Co., 8 Cir., 31 F.2d 717, certiorari denied, 1929, 280 U.S. 568, 50 S.Ct. 27, 74 L. Ed. 621, with Woelfle v. Conn. Mut. Life Ins. Co., 8 Cir., 1939, 103 F.2d 417. And see Mutual Benefit Health & Acc. Ass'n v. Francis, 8 Cir., 1945, 148 F.2d 590.

6. See Lawrence v. Nutter, 4 Cir., 1953, 203 F.2d 540. But see Carter Products v. Federal Trade Commission, 9 Cir., 201 F.2d 446, judgment vacated on other grounds, 1953, 346 U.S. 327, 74 S.Ct. 2.

7. Reilly v. Pinkus, 1949, 338 U.S. 269, 276, 70 S.Ct. 110, 94 L.Ed. 63. See also Lawrence v. Nutter, 4 Cir., 1953, 203 F.2d 540, 543.

That was not the case here. Fraud was not at issue. A cease and desist order of the Federal Trade Commission "does not approach the severity of a mail fraud order." Reilly v. Pinkus, 338 U.S. at page 277, 70 S.Ct. at page 114. And in the instances complained of here the works which petitioners sought to use touched only indirectly on the central issue. An example appears in the cross-examination of Dr. Rosenberg. Petitioners' counsel sought to read a statement in Comroe's *Arthritis* to the witness for his comment. The witness said that the book was a good one, though he would not vouch for everything that was in it, and that the chapter referred to by the cross-examiner was written by a specialist of very fine reputation. Petitioners' counsel said, "I am offering to cross-examine this witness on the question of the importance of the alleviation of pain in the field of arthritis and rheumatism." Objection was sustained. From petitioners' brief, it appears that the statement sought to be read to the witness was the following:

"Salicylates are the best of the analgesics in rheumatoid arthritis; aspirin (acetyl salicylic acid) and sodium salicylate are the most commonly used preparations."

This statement seems to us of no significant help to petitioners' case. Most witnesses readily agreed that aspirin was best for relieving the less severe pains of arthritis and rheumatism. Dr. Rosenberg had merely refused to assent to the statement that aspirin was the drug of choice as given by petitioners' counsel—unqualified and divorced from the circumstances of any individual case. And he had said that giving relief from pain was important and helpful in the treatment of rheumatism and arthritis. The value to petitioners' case of a reading of the proposition in Comroe's

*Arthritis* was, therefore, slight. The other instances were similar in this respect, and were further weakened by the fact that there was no showing that the works were authoritative or were so regarded by the witness. On the whole record, we cannot say that the trial examiner's rulings on these matters denied petitioners substantial justice, or warrant reversal of the order.[8]

Petitioners allege similar error on the part of the trial examiner when he declined to receive in evidence certain scientific writings. These articles and treatises were offered by petitioners through experts described as "eminently qualified to be fully cross-examined on the science of the field including the literature to the date of the offer." (Br. 52) We assume the writings to be authoritative, and the witnesses to be qualified.

When used to prove the truth of their contents scientific writings are clearly hearsay and are rejected as judicial evidence in all but a few jurisdictions. See United States v. One Device, 10 Cir., 1947, 160 F.2d 194, 198–199; 6 Wigmore, Evidence § 1690 (3d ed. 1940). Nevertheless, cogent arguments can be made in favor of their use. Such material, as Wigmore has pointed out,[9] is at least as reliable as the ordinary expert's testimony from the stand. It usually is characterized by precise formulation and documentation. Moreover, the ordinary expert when testifying most often relies in whole or in part upon the written works of other experts. The chief objection to the use of scientific articles—and the standard reason for the hearsay rule in general—is that the utterer of the statement (the author) is not subject to cross-examination. Yet that objection may be largely obviated by requiring the introduction of the articles through experts in the field who

8. Compare Fed.Rule Civ.Proc. 61, 28 U. S.C.A.: "No error in either the admission or the exclusion of evidence * * * is ground for * * * disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. * * *"

9. 6 Wigmore, Evidence § 1690 (3d ed. 1940).

will, themselves, be subject to cross-examination.

We think authoritative scientific writings can—and should—be freely used by administrative agencies.[10] Congress has said that "Any oral or documentary evidence may be received * * *." Administrative Procedure Act, § 7(c), 5 U.S.C.A. § 1006(c); see also Interstate Commerce Commission v. Baird, 1904, 194 U.S. 25, 44, 24 S.Ct. 563, 48 L.Ed. 860; Bene & Sons v. Federal Trade Commission, 2 Cir.1924, 299 F. 468, 471. Furthermore, the rationale of Reilly v. Pinkus points toward use of scientific texts in adversary proceedings. But, in line with our interpretation of that case on the issue of cross-examination, we think that an agency's decision should not be reversed by reason of the exclusion of scientific writings unless substantial justice so requires. We would hesitate in most cases to say that a rule almost universal in the courts would, in an administrative proceeding, deny the parties substantial justice. And here the writings in question were not vital to petitioners' case. Lengthy articles were offered on subjects of marginal significance, which had been covered (or could have been covered) by the testimony of witnesses. The record, already of great length, would have been encumbered with a vast amount of miscellaneous learning—some dating back to 1878. We do not think the trial examiner's rulings denied petitioners substantial justice.

■■■ An additional point is urged by petitioners: that the trial examiner prematurely closed the hearing, over their objection. We need not enter into a detailed recital of the facts. The first hearing began on March 6, 1950; the last was held on November 13, 1951. During this time, petitioners had asked and received delays totaling many months. Our reading of the record satisfies us that petitioners had ample opportunity to put in their case, and that the trial examiner did not abuse his discretion by closing the hearing when he did.

### III.

Petitioners earnestly contend that the provisions of the Commission's order[11] are not adequately supported by the evidence.

■■■ At the hearing Dolcin offered considerable testimony in support of its advertising. There was conflicting evidence on many points. But we do not think the Commission resolved the conflict in an unreasonable manner. Subject to what is about to be said concerning paragraph 1(c) of the order, we think the findings and order were supported, on the record as a whole, by substantial evidence. They must, therefore, be upheld, unless they are defective in other respects. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Paragraph 1(c) of the order directs petitioners to cease and desist representing "that said preparation will afford any relief of severe aches, pains, and discomforts of rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording temporary relief of minor aches, pains, or fever."

Petitioners urge that this provision is unduly restrictive, in that their product does give a measure of relief that is more than temporary, and in cases of pain that are more than minor. The record contains much to support this position, though it also supports the Commission's finding that Dolcin "will have no significant effect upon severe aches, pains and discomforts" of the conditions involved. The Commission says that petitioners, in complying with the order as written, "are not required to use the

---

10. Of course, the trial examiner must have a broad discretion to prevent a deluge of repetitive material or material of comparatively small value.

11. See note 1, supra.

word 'temporary.' They can comply by merely avoiding the use of such phrases as 'prolonged relief.'" (Br. 39) Although the Commission does not say so, like reasoning would seem to permit petitioners to avoid using the word "minor." This leaves an undesirable ambiguity. As we recently said: "It seems to us to be better procedure, in that it will eliminate confusion and possible misunderstanding, to modify the order in accordance with a clear statement of its intended meaning, rather than to construe an admittedly ambiguous phrase." Hamilton Mfg. Co. v. Federal Trade Commission, 1952, 90 U.S.App.D.C. 169, 194 F.2d 346, 347.[12]

We think that there will be less ambiguity, and closer conformity to the Commission's findings, if paragraph 1 (c) of the present order is modified to read as follows:

> "that said preparation will afford significant relief of severe aches, pains and discomforts or permanent relief of any aches, pains and discomforts of rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition, or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording relief of aches, pains or fever within the foregoing limits;"

Petitioners ask that the Commission's order be amended to preserve the right, under Section 15(a) of the Federal Trade Commission Act,[13] to distribute advertisements to members of the medical profession on a different basis than to the general public. We think this modification should not be made. The provisions of the statute are "necessarily implicit in every order issued under the authority of the Act, just as if the order set them out in extenso." Federal Trade Commission v. Ruberoid Co., 1952, 343 U.S. 470 at page 476, 72 S.Ct. 800, 804, 96 L.Ed. 1081. Advertising to the medical profession which meets the standards set by Section 15(a) thus remains protected by it, without need of modifying the order.

## IV.

Prior to the hearing in this court petitioners moved for leave to adduce additional evidence pursuant to Section 5(c) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(c) (1952).[14] We denied the motion at that time "without prejudice to a renewal at the hearing of this case on the merits." That motion has now been renewed. Petitioners allege that they have available the results of a carefully controlled clinical test of the therapeutic value of the Dolcin formula. This test, they say, was conducted by a well qualified research organization. They also allege that upon request over 300 doctors have used the Dolcin formula and have filled out questionnaires on the results. These questionnaires are now available. We think the terms of Section 5(c) have been fulfilled. The evidence is clearly material. Since there is no indication that it was available at the time of the hearing (or could or should have been made so available), petitioners had reasonable ground for failing to adduce it

12. In Rhodes Pharmacal Co. v. Federal Trade Commission, 1953, 208 F.2d 382, the Seventh Circuit had before it an order similar to the present, issued with respect to a drug called "Imdrin," of much the same formula as Dolcin. The court modified the order, but in a manner which we do not consider would be justified on the record in the present case.

13. 15 U.S.C.A. § 55(a).

14. " * * * If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. * * * ."

at that time. That being so, the disposition of the motion is within our discretion. Cf. National Labor Relations Board v. Indiana & Michigan Elec. Co., 1943, 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579; Southport Petroleum Co. v. National Labor Relations Board, 1942, 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718. We think it should be granted. At the time of the original hearing there had been no well controlled tests or large scale surveys run on the efficacy of the Dolcin formula. The instant investigations, therefore, may perhaps be regarded as significant by the Commission. We think petitioners should have an opportunity to present testimony on them to the Commission—though we do not wish to indicate any view as to the weight (if any) which the Commission should attach to them. And nothing in this opinion, of course, should be read as precluding the Commission from hearing any further evidence in the case—beyond that just discussed—which it may wish to consider.

On the other hand, this case has been in contest for a long time. The Federal Trade Commission issued a complaint against Dolcin on August 18, 1949. The hearings, with many delays, lasted until November of 1951. It is now nearing five years since the case arose. As we have said, we think the order of the Commission—as here modified—is amply supported by the present record. The public interest in the rapid suppression of misleading medical advertisements is obvious. We see no need to delay finalization of the modified order throughout the taking of the additional evidence. Section 5(c) provides that the court may order additional evidence to be taken "upon such terms and conditions as to the court may seem proper." We think a proper condition here is that the order of the Commission—as here modified— become final as though this were a simple affirmance. 15 U.S.C.A. § 45(g). If after further hearing the Commission desires to amend its order appropriate steps may be taken looking toward an alteration of our decree, or other proper action on our part.

The order of the Commission will accordingly be

Affirmed, as modified, and the enforcement thereof, as modified, will be ordered; additional evidence shall be taken in accordance with this opinion.

On Petition for Rehearing in Banc, or, in the Alternative, for Modification, by the Division Which Heard and Decided the Case, of its Opinion*

The petition was denied by a majority of the Circuit Judges in active service on November 12, 1954.

EDGERTON, PRETTYMAN, BAZELON, FAHY and WASHINGTON, *Circuit Judges, in support of their order denying the petition,* filed the following opinion:

 We do not consider that petitioners have shown good cause for a further hearing in this case. In so concluding, we have not failed to take note of the matters urged by Chief Judge STEPHENS. He considers that the court's decision, giving Dolcin an opportunity to present additional testimony before the Commission, could properly be based only on an assumption that the additional evidence would probably bring about a different result before the Commission. We do not agree. Though the evidence is material the court did not decide or intimate that it probably would change the result. The effect of the evidence is for the Commission to decide initially. The requirement as to granting new trials in the courts, namely, that there be a probability that newly-discovered evidence will change the result, is not controlling here. A motion for a new trial in a court upon the ground of newly-discovered evidence is presented to

---

* The petition for rehearing reads literally "Petition for Rehearing Before the Full Court, or, in the Alternative, for Modification of Opinion." But the legal meaning is obviously that indicated in the heading.

the trial court. That court, familiar at first hand with the trial, can evaluate the probability that the new evidence would affect the result of a trial. An appellate court does not entertain in the first instance such a motion. But, in respect to the proceeding now before us, the statute specifically authorizes us to authorize the receipt of additional evidence, newly discovered, by the Commission. We have no facilities for the complete evaluation of proffered evidence—we have no facilities for even receiving it, and the statute does not authorize us to receive it. We could not say that the evidence would probably change the result of the case, when we cannot even receive the evidence or subject it to cross examination and rebuttal. Moreover, we are an appellate body, not the trial body, and we cannot say whether the new evidence would change the balance of factors in the mind of the trial tribunal. Under this statute the function of the appellate court is to permit the adducement of newly-discovered evidence if upon the whole of the case justice seems to require that the profferer be permitted to present his new evidence to the trier of the facts.

When we have decided that the profferer of newly-discovered evidence deserves an opportunity to present his evidence to the Commission, the question arises whether permission to do so should act as an automatic stay of the Commission's order pending its receipt and consideration of the evidence and decision upon it. That is a separate problem from the problem of permission to present the evidence. It must be decided by balancing the factors pro and con a stay. Here, there have been protracted hearings and consideration. The case involves medical advertisements, which the Commission properly found on a voluminous record to be misleading to the pub-

lic. For petitioners to obey the Commission's order, and desist from the more extravagant of their claims, might—it is true—cause them to lose some of their profits. In contrast, if the advertising is in fact misleading it may cause many sick persons to postpone—perhaps irretrievably—more effective treatment, and waste their hopes and funds on petitioners' product. In such a situation, the balance of equities seems clear: the policy of the statute is served by enforcement of the order during the interim. The mere possibility that the petitioners may persuade the Commission to modify its order in some particular should not deprive the public of protection during the period of reconsideration.

We have power to take appropriate action. Section 5(c) of the Act,[1] as our opinion states, permits this court to order additional evidence to be taken "upon such terms and conditions as to the court may seem proper." In addition, it is within our "equity powers" as a reviewing court, see Ford Motor Co. v. National Labor Relations Board, 1939, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221,[2] to enforce an order of the Commission at this late point in the proceedings unless and until it is set aside or modified. The exercise of such power is comparable to that customarily exercised by a court in granting equitable relief, such as an injunction, notwithstanding further and complete proceedings in court might change the result.

As to the other points made by Chief Judge STEPHENS, we rest on the opinion previously filed.

STEPHENS, Chief Judge, *in support of his view that the petition should have been granted, filed the following opinion:*

This case came before the court on a petition for review of a cease and desist order of the Federal Trade Commission.

1. 15 U.S.C.A. § 45(c).

2. "The jurisdiction to review the orders of the Labor Relations Board is vested in a court with equity powers * * *. The statute with respect to a judicial re-

view of orders of the Labor Relations Board follows closely the statutory provisions in relation to the orders of the Federal Trade Commission * * *." 305 U.S. at page 373, 59 S.Ct. at page 307.

The Dolcin Corporation and certain of its officials, hereafter referred to as the petitioners, are engaged in the manufacture of a drug called "Dolcin", containing calcium succinate and acetylsalicylic acid (aspirin), designed to relieve the symptoms of arthritis and rheumatism. The Commission's order substantially restricted the petitioners' advertisements as to the asserted therapeutic effects of the drug. This court, sitting in a division of three, sustained, on the basis of an opinion filed, the order of the Commission, subject only to one modification in favor of the petitioners; and the court authorized the enforcement of the order as modified. But the court at the same time ordered the taking of additional evidence by the Commission. The court also ruled that the denial by the Commission of certain cross-examination attempted by petitioners' counsel was not inconsistent with substantial justice and was therefore, in view of Rule 61 of the Federal Rules of Civil Procedure, not a ground for disturbing the order of the Commission.

The present petition is for rehearing *in banc*, or, in the alternative, for modification, by the division which heard and decided the case, of its opinion.

The petitioners make two contentions. The first is: For this Court of Appeals to require the Commission to consider additional evidence to be introduced by the petitioners and for this court at the same time to order enforcement of the Commission's cease and desist order, as modified, is such a serious departure from the accepted practice of courts and commissions as to warrant a rehearing *in banc*, unless the opinion is modified in such manner as not to require enforcement of the Commission's order until the new evidence has been adduced and considered by the Commission and the Commission thus given opportunity to make such new or modified findings or recommendations as the additional evidence may require.

I think this contention of the petitioners is correct for the following rea-

sons: In the early history of the development of federal administrative agencies it was thought by some of the federal courts that the silence of the Congress, in statutes creating agencies, on the subject of the rules of evidence and procedure freed the agencies from the so-called "technical rules" or "strict rules" of evidence, pleading, and procedure; and some state statutes expressly assumed to free local administrative agencies from such rules. But it was ultimately decided in the United States courts that administrative agencies are not relieved from the essentials of the adjective law for the reason that those essentials embrace the essentials to fair hearing contemplated by the due process clause of the Constitution. The rulings of the Supreme Court on this subject are epitomized in Ohio Bell Tel. Co. v. Comm., (1937), 301 U.S. 292, 304, 305, 57 S.Ct. 724, 81 L.Ed. 1093, as follows:

Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts *when it has been reached with due submission to constitutional restraints.* West Ohio Gas Co. v. Public Utilities Comm'n (No. 1), supra, [294 U.S. 63, at page] p. 70, [55 S.Ct. 316, 79 L.Ed. 761]; West Ohio Gas Co. v. Public Utilities Comm'n (No. 2), 294 U.S. 79 [55 S.Ct. 324, 79 L.Ed. 773]; Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U.S. 287, 304 [53 S.Ct. 637, 77 L.Ed. 1180]. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, *that the "inexorable safeguard"* (St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73 [56 S.Ct. 720, 735, 80 L.Ed. 1033]) of a *fair and open hearing be maintained in its integrity.* Morgan v. United States, 298 U.S. 468, 480, 481 [56 S.Ct. 906, 80 L.Ed. 1288]; Interstate Commerce Comm'n v. Louisville & N. R. Co., supra [227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431]. The right to such a hearing is *one of "the rudiments of fair play"* (Chicago, M. & St. P. Ry. Co. v. Polt, 232 U.S. 165, 168 [34 S.Ct. 301, 58 L.Ed. 554]) assured to every litigant by the Fourteenth Amendment as a minimal requirement. West Ohio Gas Co. v. Public Utilities Comm'n (No. 1), (No. 2), supra; Brinkerhoff-Faris Co. v. Hill, 281 U.S. 673, 682 [50 S.Ct. 451, 74 L. Ed. 1107]. Cf. Norwegian Nitrogen Co. v. United States, supra [288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796]. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of

754

harassing delay, when that minimal requirement has been neglected or ignored. [Emphasis supplied]

See also Federal Radio Comm. v. Nelson Bros. Co., (1933) 289 U.S. 266, 276, 53 S.Ct. 627, 77 L.Ed. 1166, where the Supreme Court said:

* * * Whether the Commission applies the legislative standards validly set up, whether it acts within the authority conferred or goes beyond it, *whether its proceedings satisfy the pertinent demands of due process*, whether, in short, there is compliance with the legal requirements which fix the province of the Commission and govern its action, are appropriate questions for judicial decision. These are questions of law upon which the Court is to pass. [Emphasis supplied]

The Federal Trade Commission has in its own rules recognized the force of the quoted rulings. The Commission's Rule 18(a) provides that the trial examiner "shall admit relevant, material and competent evidence, but shall exclude irrelevant, immaterial and unduly repetitious evidence." The Commission's Rule 14 (e) provides that the trial examiner "is charged with the duty of conducting a fair and impartial hearing . . ." The Commission's Rule 15(a) provides:

Every party respondent shall have the right of due notice, cross-examination, presentation of evidence, objection, exception, motion, argument, appeal and all other fundamental rights * * * [The Federal Trade Commission Rules appear in 16 Code Fed.Regs. § 2.3–30 (Supp. 1953).]

One of the fundamentals of fair hearing in the Anglo-American legal system is that *both* sides shall be fully heard before a case is decided and a judgment entered. This means that all of the competent, relevant, material, non-cumulative evidence available to each party shall be heard and considered before the tribunal, whether court or administrative agency, decides. Moreover, the requirement that each party's competent, relevant, material, non-cumulative evidence shall be admitted and considered before a final decision is reached is applicable, subject to one limitation discussed below, as well to newly discovered evidence not available to a party by the exercise of due diligence during a trial as to evidence available and offered while a trial

is in process. A party discovering, after the close of an adjudicatory proceeding, new evidence not discoverable by the exercise of due diligence during the proceeding would as much be denied full hearing by refusal of the tribunal to reopen the case and consider such evidence as if he had during trial met with refusal by the tribunal to hear evidence then offered. Motions for new trial on the ground of newly discovered evidence are provided for by the Federal Rules of Civil Procedure. See Rule 60(b). In Smith v. Pollin, (D.C.Cir.1952), 90 U.S. App.D.C. 178, 194 F.2d 349, this court decided that that rule contemplates a motion for new trial on the ground of newly discovered evidence, even while an appeal is pending. Moreover, the Federal Trade Commission Act itself provides, in Section 5(b), 38 Stat. 720 (1914), as amended, 15 U.S.C. § 45(b) (1952), for the re-opening of a case by the Commission itself at any time before the filing of the record under a petition for review, and provides also, in Section 5(c), 38 Stat. 720 (1914), as amended, 15 U.S.C. § 45(c) (1952), for the adducing of additional evidence before the Commission, after the filing of the record and pending review, upon order of the court of appeals. It is under this section that the court in the instant case ordered the further evidence adduced.

The most recent rulings of the Supreme Court pertinent to the question presently under discussion are Universal Camera Corp. v. National Labor Relations Bd., (1951), 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, and National Labor Relations Board v. Pittsburgh S. S. Co., (1951), 340 U.S. 498, 71 S.Ct. 453, 95 L. Ed. 479. Though the essential issue raised in those cases was as to the effect of the Administrative Procedure Act and of the Taft-Hartley Act upon the duties of a United States Court of Appeals when called upon to review orders of the National Labor Relations Board, the rulings are apt in respect of the standards of judicial review in appeals from orders of federal boards, commissions, and agencies generally. With respect to such

standards of judicial review the Court said, *inter alia:*

Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision *merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn,* the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

\* \* \* \* \*

Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that *the record in its entirety* furnishes, including the body of evidence opposed to the Board's view.

\* \* \* \* \*

We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, *on the record as a whole,* by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

\* \* \* \* \*

Whether on *the record as a whole* there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied. [ (1951) 340 U.S. 474, 487, 488, 490, and 491, 71 S.Ct. 456, 463, 464, 465 and 466.] [Emphasis supplied]

Since under the foregoing rulings of the Supreme Court a federal court of appeals cannot properly sustain a decision of an administrative agency or board unless there is substantial evidence on the record as a whole to support the agency's findings, it follows that the agency or board itself cannot properly decide a case by considering only a part of the evidence in the record before it. *A fortiori,* it cannot, subject to the limitation discussed below, properly decide a case on a record which is incomplete because newly discovered evidence of competent, relevant, material, non-cumulative character not obtainable by the exercise of due diligence during the tribunal's hearing is still to be adduced. It follows from the foregoing that a court cannot properly— as this court has assumed to do in the instant case—enforce an agency decision based upon a record which is incomplete because such newly discovered evidence has not yet been considered.

There is but one limitation upon the duty of a court or commission to reopen for newly discovered competent, relevant, material, non-cumulative evidence, to wit, that evidence must be of such character as will probably bring about a result different from that reached by the tribunal without such evidence. This proposition is so elementary in respect of courts that a reference to mere general authority is sufficient to support it. See 39 Am.Jur., New Trial § 165:

To constitute sufficient ground for a new trial, newly discovered evidence must not only be relevant and material to the principal issues in the case, . . . but must be sufficiently strong to make it probable that a different result would be obtained in another trial. The new evidence must be of a decisive and conclusive character, or at least such as to render a different result reasonably certain. \* \* \* [Footnotes omitted]

Numerous cases are cited to this effect. Since this is the rule in respect of courts, *a fortiori* an administrative agency ought not be required to reopen a proceeding and hear additional evidence unless such evidence will probably bring about a result different from that reached without it.

The division of this Court of Appeals which decided the instant case—in ordering the proffered newly discovered evidence adduced before the Commission —described the evidence as "clearly material." It also said that there is no indication that the proffered evidence was available at the time of the hearing or

that it could or should have been made so available, and the court therefore ruled that the petitioners had reasonable ground for failing to adduce it at the time of the hearing before the Commission. Although the court said in its original opinion that it did not wish to indicate any view as to the weight which the Commission should attach to the newly discovered evidence, and although the court says in its supplemental opinion that it did not decide or intimate that the newly discovered evidence would probably alter the result which the Commission had reached without it, I think the court should have reached a decision not only that the evidence was competent, relevant, material and non-cumulative, but also such evidence as would probably alter the result which the Commission had reached without it; otherwise the court was not justified in requiring the Commission to take the time to hear the additional evidence and the petitioners to go to the expense of the further proceeding.

That the court could properly have concluded that the newly discovered evidence was competent, relevant, material and non-repetitious and that it would probably change the result which the Commission had reached without it, is amply shown by the nature of the proffered evidence itself, as described by the petitioners, in relation to the findings and rulings of the Commission: In this case the Commission charged the petitioners with false and misleading advertising of material character concerning the therapeutic value, for the relief of the symptoms of arthritis and rheumatism, of Dolcin. Much of the evidence in the case as tried before the Commission had to do with the comparative therapeutic effects of acetylsalicylic acid alone (aspirin) orally administered and of calcium succinate combined with acetylsalicylic acid (Dolcin), also administered orally. There was evidence to the effect, and the Commission found, that calcium succinate administered orally rather than intravenously is therapeutically inoperative, and that therefore the only active ingredient contained in Dolcin is the acetylsalicylic acid. The Commission found that "The drug preparation 'Dolcin', however taken, will not ameliorate the aches, pains and discomforts of any arthritic or rheumatic condition to any extent beyond the temporary relief thereof afforded by its salicylate content as an analgesic and antipyretic." The Commission also found that "Since the only therapeutically operative ingredient in the drug preparation 'Dolcin' is acetylsalicylic acid, commonly known as aspirin, and since the retail selling price, without prescription, of 100 tablets of the drug preparation 'Dolcin' is $2.00 whereas that of 100 tablets of a well-known brand of aspirin is 59¢, while many other brands of aspirin sell for less, the drug preparation 'Dolcin' is not economical, inexpensive, or of low cost." It was in view of these findings that the Commission's cease and desist order in paragraph (c) restrained the petitioners from advertising:

that said preparation will afford significant of severe aches, pains, and discomforts of rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording temporary relief of minor aches, pains, or fever;

The court modified this order so that it restrained the petitioners from advertising:

that said preparation will afford any relief relief of severe aches, pains and discomforts or permanent relief of any aches, pains and discomforts of rheumatic fever, fibrositis, myositis, neuritis, sciatica, lumbago, bursitis, or any other kind of arthritic or rheumatic condition, or have any therapeutic effect upon any of the symptoms or manifestations of any such condition in excess of affording relief of aches, pains or fever within the foregoing limits;

It was further in view of these findings that the Commission's cease and desist order in paragraph (g) restrained the petitioners from advertising that the preparation Dolcin is economical, inexpensive, or of low cost unless the retail selling price shall be less than the retail selling price of its only active ingredient, to wit, acetylsalicylic acid, commonly known as aspirin.

The newly available evidence is of two classes: One class includes data secured through a survey of the recorded results of treatment of patients for arthritic and rheumatic conditions; the other class includes data obtained from a controlled clinical investigation carried on by a qualified and recognized research organization. The class of evidence first referred to was obtained by a survey made by Pan Pharmacals, Inc., a concern distributing, under license from the Dolcin Corporation, a succinate-salicylate formulation, carrying the brand name "Ber-Ex", of the identical composition of Dolcin tablets. Letters were addressed by Pan Pharmacals, Inc. to more than 300 doctors asking each recipient whether he would be willing to test the efficacy of Ber-Ex in the treatment of arthritis and rheumatism by selecting from among his patients "the two that hold special interest for you." In the same letter it was stated that those who would agree would be furnished Ber-Ex free of charge in the quantity required to treat those two patients "to a point where you can reach a definite conclusion as to its merits." This was further conditioned on the promise by the doctor that he would make careful observation of the effect of the drug on his patients and would record and report the data thus obtained by filling in the blanks of a form submitted to him. More than 300 doctors reported on more than 400 cases by filling in the answers to the questions in the form. Three-hundred-nineteen doctors recorded their answers to the last question, namely, "How does Ber-Ex compare with other therapies you have used in cases of this type?" as follows:

Superior to other types 71.5%
As good as other therapies 24.8%
Not as good as other therapies 3.7%

The answer "superior to other types" must fairly be assumed to include a reference to aspirin since it is a drug commonly used in the treatment of arthritis and rheumatism. The results of this survey will be available for presentation at the hearing before the Commission, and many of the doctors will be available as witnesses.

As to the second class of evidence: Pan Pharmacals, Inc. also engaged the services of a qualified and recognized research organization to test clinically the therapeutic value of its succinate-salicylate formulation, Ber-Ex, in treating arthritic and rheumatic conditions, and to compare its efficacy with that of aspirin alone, all under proper controls of such tests. Again a form was supplied which supervising doctors were required to fill in periodically when making observations. The doctors were required to make at least five follow-up examinations on each patient. The form used in connection with this second class of evidence called for data on the basis of which experts might judge whether the preparation Ber-Ex does or does not have any value in the treatment of arthritic and rheumatic conditions, and will clearly show the relative value of the two drugs to be tested and compared.

If the proffered evidence, when introduced before the Commission, is found—when considered with all of the other evidence—to result in a preponderance favorable to the petitioners on the issues in question, it will require modification of the Commission's finding that calcium succinate is inoperative when orally, rather than intravenously, introduced and that Dolcin is not more effective therapeutically than aspirin, and it will therefore also require modification of the finding of the Commission that Dolcin is over-priced as compared with aspirin. It will require also modification, or possibly elimination, of paragraph (g) of the Commission's cease and desist order, as described above, and will also require modification of paragraph (c) of the Commission's order, as modified by the court, if the Commission is convinced by the evidence that Dolcin does give significant relief from severe aches, pains and discomforts. It is apparent that the proffered evidence attacks the essence of a substantial portion of the Commission's case for a cease and desist order.

It is especially to be noted that although the Commission resisted the petitioners' motion to adduce additional evidence it did not, so far as the briefs show, ask for enforcement of its order prior to the reception of the new evidence, should the motion to adduce be granted.

I disagree with the view of the court stated in its supplemental opinion that under the Federal Trade Commission Act the function of the appellate court is to permit the adducement of newly discovered evidence "if upon the whole of the case justice seems to require that the profferer be permitted to present his new evidence to the trier of the facts." I find nothing in the Act itself which so defines the function of the appellate court. In my view, neither a court nor a commission properly reopens for additional evidence unless that evidence when received will probably change the result. In administrative agency cases the procedure prescribed for the adducing of newly discovered evidence is, of course, different from that prescribed for court cases. In the latter, the opportunity, after the completion of a trial, to introduce newly discovered evidence is secured through a motion for new trial addressed to the trial court itself, not to the court of appeals. But under the federal administrative agency statutes, including the Federal Trade Commission Act, not only may motions be made for rehearing before the agencies themselves, but also motions to adduce additional evidence may be made in the courts of appeals. This, in my view, places a responsibility upon such courts, when their power is invoked, to determine whether or not the proffered evidence is competent, relevant, material and non-cumulative, and such as will probably change the result. This does not mean that the courts of appeals must themselves hear the proffered evidence [1]; but they must give sufficient attention to the description of the evidence in the motion to adduce and in the briefs in support thereof and in opposition thereto to make that determination. In the instant case this court received written briefs on this subject and heard oral argument.

The second contention of the petitioner is, in effect, that the ruling of the court, referred to above, in respect of denial of cross-examination involves a misapplication of Rule 61 of the Federal Rules of Civil Procedure and involves such a serious departure from the requirements of fair hearing as to warrant a rehearing in banc, unless the opinion is modified, by the division which heard and decided the case, in such manner as to permit the cross-examination on a further hearing of this case before the Commission. This contention arises out of the following: On direct examination opinion testimony of doctors called by the Commission was to the effect that the advertised product, "Dolcin", was not efficacious in respect of arthritis and rheumatism beyond affording temporary relief from minor symptoms. Counsel for the petitioners sought to cross-examine the doctors thus testifying by confronting them with contradictory medical opinions by reputable authorities published in reputable scientific journals; thereby, petitioners' counsel was attempting to obtain a modification by the witnesses of their testimony on direct examination. The

---

1. The assumption of the court that on motions for new trial upon the ground of newly discovered evidence trial courts customarily hear the proffered evidence and subject it to cross-examination and rebuttal is, in my view, not correct. The prevailing practice in trial courts appears to be to consider the proffered evidence on the basis of a description thereof in written statements or in affidavits. See 6 Moore, Federal Practice ¶59.08 [3] (2d ed. 1953); 10 Cyclopedia of Federal Procedure § 34.05 (3d ed. 1952); 66 C.J.S. New Trial § 184; 39 Am.Jur., New Trial § 162.

Apparently a similar practice prevails in commissions. See 49 Code Fed.Regs. § 1.101(b) (1949) [Interstate Commerce Commission]; 18 Code Fed.Regs. § 1.34 (1949) [Federal Power Commission]; 14 Code Fed.Regs. § 302.37(b) (1952) [Civil Aeronautics Board]; 17 Code Fed. Regs. § 201.12(d) (1949) [Securities and Exchange Commission].

trial examiner forbade this cross-examination and excluded from the evidence the scientific journals offered as a part of the cross-examination. The Commission affirmed the ruling of the examiner. This court in its opinion rules that while it was error for the Commission's examiner thus to limit the cross-examination, the examiner's ruling did not deny the petitioners substantial justice nor warrant reversal of the order. The court's ruling is based upon Rule 61 of the Federal Rules of Civil Procedure which provides that "No error in either the admission or the exclusion of evidence . . . is ground for . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice . . .."

The petitioners contend that this Rule contemplates a completed record from the four corners of which it may be determined whether or not reversal is warranted by the errors as recorded; that the character of the excluded evidence contemplated by the Rule must be shown in the record; that the Rule cannot address itself to unknown matters *outside* of the record, such as "unanswered questions," because any determination of so-called "harmless error" on matters never adduced is speculative, since the harmfulness or harmlessness of the error must be determined on the basis of guessing what the witness might have answered had the unlawful exclusion not occurred. I think this contention is correct. How can it be known by this court what the doctors who testified on direct examination would have said upon being confronted by the scientific journals and upon being questioned concerning them? Of course, they might not have modified their testimony. But, on the other hand, they might have modified it to some degree, or even substantially, and as a result the Commission's ultimate order might have been a materially different one. Cross-examination upon material issues is a right; it is only the extent of it which is within the discretion of the trial officer. This is recognized by the court in its ruling that the trial examiner's forbidding the cross-examination and excluding the scientific journals proffered as a part thereof was erroneous. In my view speculation as to what the answers of the doctors might have been cannot satisfy Rule 61. The following authorities seem to me to be controlling: Reilly v. Pinkus, (1949), 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63, opinion by Mr. Justice Black; Garfield Memorial Hospital v. Marshall, (D.C.Cir. 1953), 92 U.S.App.D.C. 234, 204 F.2d 721, opinion by Judge Wilbur K. Miller; Hastings v. Chrysler Corporation, (1st Dep't.1948), 273 App.Div. 292, 77 N.Y. S.2d 524, opinion by Judge Shientag; Lawrence v. Nutter, (4th Cir.1953), 203 F.2d 540, opinion by Judge Soper; Lindsey v. United States, (D.C.Cir.1942), 77 U.S.App.D.C. 1, 133 F.2d 368, opinion by Stephens, Associate Justice, concurred in by Associate Justice Rutledge, Associate Justice Edgerton dissenting.

It is noteworthy that the Commission has not opposed the present petition for a rehearing *in banc*, or, in the alternative, for a modification, by the division which heard and decided the case, of its opinion. The Commission apparently does not now seek to justify the court's ordering the cease and desist order enforced but at the same time granting the motion to adduce and requiring the Commission to hear the proffered additional evidence; and the Commission seems not now to seek to justify the denial of cross-examination above described or to urge that it was harmless error.

The only exception to the requirement of full hearing before decision by a court or administrative agency and enforcement of its judgment or order is in the use of preliminary or temporary injunctions in the public or private interest, with the opportunity to a party subjected to such an injunction to be protected by bond except in cases in which the United States is the plaintiff. There is provision in the Federal Trade Commission Act for the issuance by a district court of a temporary injunction or restraining order, in the public interest,

upon application by the Commission and upon a proper showing. See Section 13 of the Act, 52 Stat. 115 (1938), 15 U.S. C. § 53 (1952). But in the instant case the Commission has at no stage of the proceeding invoked this injunctive power. If the Commission itself did not see fit to ask the district court to enjoin, pending the Commission proceeding, the advertising charged to be unlawful, it is hardly for this court in effect to enjoin the advertising and to do so *sua sponte.* Indeed, for the court to do so is for the court to assume a power conferred not upon it but upon the district court.

I think this court should not set **a** precedent in the field of administrative law and procedure permitting, apart from any use of the temporary injunction or restraining order process available to the Commission upon application and proper showing to a district court, the enforcement of an order on an incomplete record—a precedent which in effect permits treating an order both ways at the same time, *i. e.,* treating it as valid for the purpose of enforcement but as not valid for lack of full hearing of all of the available competent, relevant, material, non-cumulative evidence; and a precedent which permits an order to stand in the face of a clear denial of the right of cross-examination. The case of Ford Motor Co. v. National Labor Relations Board, (1939), 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221, cited by the court in its supplemental opinion, does not, in my view, support the position of the court that the order of the Commission in the instant case should be enforced notwithstanding the fact that the case is remanded for consideration of the newly discovered evidence. In the case cited the remand, by the United States Court of Appeals for the Sixth Circuit, 99 F.2d 1003, for further proceedings was made without enforcement of the Labor Board's order; the Court of Appeals did not rule upon the validity of the order.

I would therefore grant the petitioners' petition for rehearing *in banc*

unless, in the alternative, the division which heard and decided the case modifies its opinion in the particulars above commented upon.

*I am authorized to state that Circuit Judge Wilbur K. Miller concurs in this opinion.*

Circuit Judge DANAHER took no part in this case.

Circuit Judge BASTIAN, who took office after the petition was denied, took no part in this case.