Lloyd STOTTLEMIRE, Administrator of the Estate of Bonnie Ann Stottlemire and Lloyd Stottlemire, Individually, Plaintiff,

v.

James C. CAWOOD

and

Parke, Davis Company, a Corporation, Defendants.

Civ. A. No. 1356–58.

United States District Court

District of Columbia.

March 28, 1963.

Arthur L. Willcher, Washington, D. C., for plaintiff.

H. Mason Welch, Washington, D. C., for defendant Cawood.

John L. Laskey, Washington, D. C., for defendant Parke, Davis Co.

HOLTZOFF, District Judge.

The trial of this case having terminated in a directed verdict in favor of each defendant, the plaintiff moves for a new trial. A number of grounds are advanced in support of the motion. Most of them have already been discussed in full, either during the trial or in connection with the direction of the verdict, 213 F.Supp. 897. One point relating to the admissibility of evidence seems to merit comment at this juncture.

This action was brought against a physician and a manufacturer and distributor of drugs, to recover damages for negligence claimed to have resulted in the death of an infant. The specific charge against the defendant physician is that he improvidently prescribed an antibiotic drug, known as chloromycetin, for a minor infection in one of the child's ears; that the drug adversely affected the child's bone marrow, which, in turn, caused the child to have aplastic anemia, thereby bringing about her death. The

defendant Parke, Davis Company, the manufacturer of the drug in question, is charged with negligence in failing to warn the public of its potency. The reasons why the Court held that no cause of action was established against either defendant by the competent evidence presented at the trial, are fully discussed in the prior opinion of the Court, and need not be reiterated. This opinion will be confined solely to the question of admissibility of one item of evidence, which the Court excluded.

It was the plaintiff's contention at the trial that chloromycetin is a very potent drug with a possibility of dangerous reactions, and that it constituted negligence to use this drug for minor infections or for any other condition except one of a very serious or grave nature. In an endeavor to adduce testimony in support of this position, the plaintiff called Dr. Charles W. Rath as an expert witness, who stated that he specialized in hematology, i. e., that he was a blood specialist. In answer to questions propounded to him by plaintiff's counsel on direct examination, he testified that chloromycetin was effective in a wide variety of infections; that the drug was and is widely used by general practitioners; and that it was customary to employ it for minor infections, as well as for infections of other types. Apparently this was an answer that plaintiff's counsel did not anticipate or expect.

Continuing his direct examination counsel then asked the witness whether he was familiar with a publication known as "New and Non-official Remedies". The witness replied in the affirmative and, in response to a further question, stated that this publication was authoritative in its field.

The following question was then asked:

"Q. Do you agree with this statement in 1953—(Tr. p. 42)

\* \* \* \* \* \* \*

"Q. 'Because of the occurrence of serious and fatal blood dyscrasias, it is advisable to restrict the use of chloramphenicol to the treatment of typhoid fever and other serious infectious diseases caused by organisms controlled by chloramphenicol but resistant to other antibiotics or other forms of treatment. Chloramphenicol may produce nausea and vomiting \* \* \* '". (Tr. p. 43)

Counsel for the defendant physician objected to the question and his objection was sustained. The Court gave the following reason for its ruling (Tr. p. 44):

"I am going to sustain the objection. It is proper on cross-examination of an expert witness, for cross-examining counsel to ask the witness whether he agrees with a statement in a publication that is recognized as an authority. In my opinion, it is not permissible to do so on direct examination."

■■ It is the rule in the Federal courts that on cross-examination an expert witness may be interrogated concerning his knowledge of textbooks, treatises, articles, and other publications in his field, and that he may be confronted with extracts from them and asked whether he is familiar with them and whether he agrees with them, Reilly v. Pinkus, 338 U.S. 269, 275, 70 S.Ct. 110, 94 L.Ed. 63; Dolcin Corp. v. Federal Trade Commission, 94 U.S.App.D.C. 247, 252, 219 F.2d 742; Abrams v. Gordon, 107 U.S.App.D.C. 254, 276 F.2d 500. This principle was summarized as follows in Dolcin Corp. v. Federal Trade Commission, supra, (p. 252 of 94 U.S. App.D.C., p. 746 of 219 F.2d):

"\* \* \* an expert witness who bases an opinion to a significant degree upon his reading may be cross-examined as to that opinion by reference to other reputable works in his field."

The rationale of the rule is that such cross-examination tests the expert witness' credibility and reliability by enquiring as to the extent of his familiarity with authorities in his specialty and by

asking him whether he agrees with them. The extracts with which the witness is confronted on cross-examination do not, however, become affirmative evidence in the case.

■ An entirely different principle is involved when a party seeks to propound questions of this type to his own expert witness on direct examination. Such interrogation on direct examination may possibly be pursued for either one of two reasons, neither of which is permissible. It may be done in order to corroborate and fortify the witness' opinion if the extract read to him agrees with his views. To do so, however, would, in effect, be to make the publication evidence in support of the party's case without subjecting the author to cross-examination. The other possible purpose for which this course might be followed, is to contradict the expert witness if the opinion expressed by him on the witness stand is not as favorable as was expected by the party who called him. Obviously this was attempted in the case at bar. Assuming that a party is not bound by the testimony of a witness whom he, himself, calls, and that he may contradict him by other witnesses, he may not do so by confronting the witness with publications, the authors of which are not subject to cross-examination. The publications themselves are not admissible in evidence independently, and to bring them to the notice of the jury in this indirect manner would be to defeat the rule against their admission, United States v. One Device, etc., (C.A. 10th) 160 F.2d 194, 198; Atlanta Corporation v. Olesen, (SD–Calif.) 124 F. Supp. 482, 488.

The case last cited involved an action to enjoin the enforcement of a fraud order issued by the Postmaster General against the sale of a device to beautify women. Testimony was taken before a Hearing Examiner of the Post Office Department. One of the errors assigned by the plaintiff was that the Hearing Examiner precluded him from interrogating his expert witnesses on direct examination concerning medical books and treatises. The Court overruled this contention in the following language (p. 488):

"Finally, Atlanta contends that it was prevented from using medical books and treatises during the course of its direct examination of its expert witnesses. We think the examiner's ruling was correct. There is a major distinction between the use of medical text and treatises on direct examination and on cross."

Maryland has applied the same rule in Allison v. State, 203 Md. 1, 98 A.2d 273, 275. An expert witness was called and asked on direct examination whether he agreed with certain statements in a textbook, which were read by counsel to the jury. The Court sustained an objection to the question. The Court of Appeals stated:

"We find no error. Medical textbooks are not admissible as such or in the direct examination of experts."

To the same effect are Salgo v. Leland Stanford Jr. University Board of Trustees, 154 Cal.App.2d 560, 317 P.2d 170; and Eckleberry v. Kaiser Foundation Northern Hospitals, 226 Or. 616, 359 P. 2d 1090, 1092, 84 A.L.R.2d 1327. In the last cited case the Court pointed out that the only conceivable purpose that could have been served by interrogating an expert witness on direct examination concerning a treatise in his field and asking him whether he agreed with the statement contained in it, was either to offer the book as independent evidence, or to impeach the experts of the opposing party. The Court pointed out that neither purpose was permissible.

If treatises and other publications on technical matters were admissible in evidence, it is conceivable that a Court or jury might find itself confronted with a large number of extracts from textbooks, treatises, and articles espousing varying views or different schools of thought on some technical question. The trier of the facts would not be aided by any cross-examination or any other method of test-

ing the weight to be accorded to the various statements. For a layman to endeavor to reach a conclusion by a comparison of published technical statements that have not been tested in the crucible, would not be conducive to a just and intelligent solution of a disputed matter of this kind. Consequently, practical considerations as well as legal principles lead to the exclusion of such evidence. Exactly the same considerations apply to an effort to introduce such statements as part of the direct examination of a party's own expert and thereby either corroborate or contradict his oral testimony.

For the foregoing reasons, this Court upon further consideration of its ruling excluding the evidence in question, has determined to adhere to it.

Accordingly, the motion for a new trial is denied.