## WEST OHIO GAS CO. *v.* PUBLIC UTILITIES COMMISSION OF OHIO. (No. 2).

No. 213. Submitted December 7, 1934.—Decided January 7, 1935.

*Messrs. Edmond W. Hebel, Harry O. Bentley,* and *Charles C. Marshall* submitted for appellant.

*Mr. John W. Bricker,* Attorney General of Ohio, and *Mr. Donald C. Power,* Assistant Attorney General, submitted for appellee.

MR. JUSTICE CARDOZO delivered the opinion of the Court. .

The rates to be charged by the appellant in Kenton, Ohio, are the subject matter of this controversy.

An ordinance adopted by the city council of Kenton on July 16, 1929, effective on August 16, prescribed a schedule of rates within the city for a period of two years. The appellant, West Ohio Gas Company, filed a complaint with the Public Utilities Commission, maintaining its existing schedule for the time being and giving bond as it had done in the Lima case (*ante,* 63), for the return of the excess, if any. The commission fixed the value of the property in Kenton for the purpose of a rate base at $189,856.56. The company acquiesced in the valuation, which for the purpose of this review must be accepted as correct. Thereafter, on March 10, 1933, the commission made a final order determining the ordinance schedule to be unjust and unreasonable, and establishing a new schedule, which was to be effective during the period of the ordinance (August 16, 1929 to August 16, 1931) and a year and a half afterwards (i. e., till February 16, 1933). Collections during the course of the proceeding in excess of the new rates were to be refunded to consumers. A motion for a rehearing having been denied, the company filed a petition in error with the Supreme Court of Ohio, asserting that the order of the commission was in contravention of the limitations of the Fourteenth Amendment. The Supreme Court of Ohio affirmed, writing a single opinion here and in the Lima case. 128 Ohio St. 301; 191 N. E. 105. An appeal to this court followed.

The intention of the commission was to establish a schedule of charges that would enable the appellant to receive a return of 6% upon the value of the Kenton property. To accomplish that result there was need of

a net income of $11,391.39. As the result of mathematical errors, the commission arrived at the conclusion that income in that amount had been earned in 1929, the year chosen as a standard. In fact the rate of return for that year was only 4.92%, even if all contested rulings in respect of points of law are assumed to be correct.

Errors of computation such as these are far from exhausting the list of defects in these proceedings. There are others more clearly vital. To ascertain the gross income and the operating expenses the commission confined itself to the business in 1929, predicting on that basis the income and expenses to be looked for in the years to follow. Besides the figures for 1929, there was evidence, full and unchallenged, as to the actual revenue and outlay for 1930 and 1931. The commission refused to give any heed to that evidence in fixing the new rates. It did this in the face of a petition for rehearing which sharply brought to its attention the effect of such exclusion. If heed had been given to the later years, the return for 1930 would have been seen to be 4.23% and for 1931, only 3.68%, all this, moreover, on the assumption that further error was not committed in the classification or disallowance of operating charges. If such error existed, the return would be even lower.

We think the adoption of a single year as an exclusive test or standard imposed upon the company an arbitrary restriction in contravention of the Fourteenth Amendment and of " the rudiments of fair play " made necessary thereby. *West Ohio Gas Co.* v. *Public Utilities Commission of Ohio* (appeal No. 1), decided herewith, *ante,* p. 63; *Chicago, M. & St. P. Ry. Co.* v. *Polt,* 232 U. S. 165, 168. The earnings of the later years were exhibited in the record and told their own tale as to the possibilities of profit. To shut one's eyes to them altogether, to exclude them from the reckoning, is as much

arbitrary action as to build a schedule upon guesswork with evidence available. There are times, to be sure, when resort to prophecy becomes inevitable in default of methods more precise. At such times, " an honest and intelligent forecast of probable future values made upon a view of all the relevant circumstances " (*Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri,* 262 U. S. 276, 288; *Los Angeles Gas & Electric Corp.* v. *Public Service Commission of California,* 289 U. S. 287, 311), is the only organon at hand, and hence the only one to be employed in order to make the hearing fair. But prophecy, however honest, is generally a poor substitute for experience. " Estimates for tomorrow cannot ignore prices of today." *Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri, supra,* at p. 288. We have said of an attempt by a utility to give prophecy the first place and experience the second that " elaborate calculations which are at war with realities are of no avail." *Lindheimer* v. *Illinois Bell Telephone Co.,* 292 U. S. 151, 164. We say the same of a like attempt by officers of government prescribing rates to be effective in years when experience has spoken. A forecast gives us one rate. A survey gives another. To prefer the forecast to the survey is an arbitrary judgment.

In the light of this conclusion we find it needless to dwell upon more particular objections affecting the classification and disallowance of payments which, in the view of the appellant, are charges upon the expenses of operation. For the most part the objections are similar to those considered in number 212, decided herewith. What has been said in that case will guide the commission and the state court in the event of a rehearing.

We are not unmindful of the argument urged by counsel for the commission that the effect of lower prices may be to swell the volume of the business, and by thus in-

creasing revenues enhance the ultimate return. Upon the record as it comes to us, this is guesswork, and no more. There has been no attempt to measure the possible enhancement by appeal to the experience of other companies similarly situated or by any other line of proof. Present confiscation is not atoned for by merely holding out the hope of a better life to come.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*