MARIO ESCUDERO, Petitioner, *v.* MINIMUM WAGE BOARD OF PUERTO RICO, Respondent.

No. 102.   Argued December 10, 1945.—Decided May 10, 1946.

*Joaquín Velilla* for petitioner.   *Ismael Soldevila* for respondent.

MR. JUSTICE SNYDER delivered the opinion of the court.

This is a petition for review of a decree of the Minimum Wage Board establishing wages, hours and working conditions for the milk industry of Puerto Rico.

The petitioner argues together the following alleged errors: the Board failed to comply with § 12 of Act No. 8, Laws of Puerto Rico, 1941 (p. 302), because it investigated only the condition of the workers and did not take into consideration the cost of production, the financial and economic situation of the industry, and the special conditions prevailing in Puerto Rico; the books of typical farmers from different regions with varying production show that the industry is unable to absorb the rates decreed; the decree is null because it is not based on substantial evidence; and the rates fixed by the decree are confiscatory and deprive the petitioner of his property without due process of law, as the testimony shows that he has been operating at a substantial loss while paying salaries lower than those provided in the decree.

An examination of the record discloses that the Board took into consideration all the factors recited in § 12 and that there was sufficient basis in the testimony for its decree. Moreover, subsequent to the issuance of this decree, the Office of Price Administration authorized an increase in the sales price of milk. Under those circumstances, we are not at liberty to substitute our judgment for that of the Board and to vacate this decree as entered without authority because the owner of one dairy contends that his present operations are resulting in losses rather than profits. See *Luce & Co.* v. *Minimum Wage Board,* 62 P.R.R. 431; *Columbus & G. Ry. Co.* v. *Adm'r of Wage and Hour Div.,* 126 F.(2) 136 (C.C.A. 5th, 1942).

The decree provides that the value of the milk furnished by owners to their employees is part of the salary of the latter, and that if milk is furnished to them, except for milkers, a deduction therefor is to be made from their salaries at the rate of 10¢ a litre in the first zone and 8¢ in the second. As to milkers, they are given the right to a litre of milk a day free of charge, with the proviso that they are entitled to additional compensation at the aforesaid rates of 10¢ and 8¢ a litre if the litre a day is not furnished to them.

The petitioner contends that this provision of the decree forces him to sell milk to his employees at lower than the prevailing market price, thereby taking his property without due process of law; and that the Board has no power under Act No. 8 to impose on the petitioner the duty of furnishing milk to his employees.

The testimony showed that a large majority of the workers in the dairies which were investigated received at least a litre of milk a day in addition to their salaries. This provision of the decree was therefore primarily designed to prevent a *pro tanto* reduction of salary through the device of selling milk to employees at a high price.

The decree does not compel employers to sell milk to their employees. It only sets the price therefor if by mutual agreement they make such an arrangement. And as to milkers, who customarily received a litre of milk free, it continues this privilege. But even here the employers are not forced to sell milk to milkers. If they choose they may refuse to furnish milk to milkers, in which event the compensation of milkers—which the Board found in the past consisted in part of this milk—is increased in the amount of the sales price of the milk to the other employees as fixed by the decree. We find nothing in this provision of the decree violative of the constitutional rights of the petitioner.

We need not stop to examine the question of whether the Legislature conferred authority on the Board to make this provision in its decree. The shortest answer to this contention is that this decree of the Board, promulgated on May 5, 1945, to take effect in sixty days, was ratified by the Legislature when it provided by § 2 of Act No. 217, Laws of Puerto Rico, 1945 (p. 680), approved May 11, 1945, that "All mandatory decrees, regulations, agreements, and orders entered or adopted by the present Board shall continue in force until revoked, suspended, amended, or altered by the new Board."

The decree provides for the agricultural phase of the industry a minimum salary of twenty cents an hour in the

first zone and eighteen cents an hour in the second zone. For employees engaged in pasteurization and distribution the minimum salary provided in the decree is thirty cents an hour in the first zone and twenty-five cents an hour in the second zone.

The business of the petitioner is in the first zone. He contends that provision for different salaries in the two zones is violative of the italicized provision in paragraph 2 of § 12 of Act No. 8, as amended by Act No. 217, that the "board may . . . prescribe different minimum wages for various districts or regions . . . when, in its judgment, such differentiation may be advisable due to the conditions existing between said districts, regions . . . *provided that such action does not grant competitive advantage to other districts, regions . . .*". (Italics ours.)

The best answer to this contention is found in the order of the Board denying the motion for reconsideration, reading in part as follows: "The testimony shows that in the first zone salaries a little higher than those paid in the second zone can be paid, because marketing opportunities, a good sales price, access to raw materials and transportation facilities are less available in the second zone. The testimony shows that as a matter of fact higher salaries are being paid in the first zone than in the second zone. For all these reasons, the classification is reasonable. See *Luce & Co.* v. *Minimum Wage Board,* 62 P.R.R. 431, 437, footnote 3."

██ The petitioner next assigns as error that after the public hearing and before issuance of the decree, employees of the Board were assigned to make reports on the books of some of the farmers who had testified at the hearing. The petitioner complains that the Board must have considered these reports, which were never introduced in evidence and which the employers never had an opportunity to refute or explain, in framing its decree.

If the Board deems it necessary, after the close of a public hearing and before issuing a decree, to obtain by investiga-

tion information which it proposes to take into consideration in deciding a case, it must as a matter of due process make the results of the investigation known to the interested parties and give them an opportunity for cross-examination and rebuttal before deciding the case. *Mayagüez Sugar Co.* v. *Court of Tax Appeals,* 60 P.R.R. 737, 749; *Casanovas & Cía.* v. *Court of Tax Appeals,* 61 P.R.R. 52; *Alemañy* v. *Industrial Commission,* 63 P.R.R. 578.

Pursuant to our order the Board has forwarded to us the reports in question, which show on their face that they were made to the Chairman of the Board after the hearings were closed and before the decree was issued. But there is nothing in the record indicating that the Board took these reports into consideration in reaching their conclusions. In denying the motions for reconsideration which raised this point the Board asserted that it made no such use of these reports and relied solely on the testimony adduced at the public hearing.

We think the practice followed in this case was highly undesirable. Reports of investigation made after the hearing which are never seen by the parties inevitably raise the suspicion that the Board has taken them into consideration in deciding the case. It is difficult to see what other purpose there could be in such investigations. It would enhance the reputation of the Board for even-handed justice if it reopened such a case and made such investigations a matter of record with the right of cross-examination and rebuttal. However, as there is nothing in the record to contradict the assertion of the Board that in deciding the case it did not take into consideration the reports of these subsequent investigations, we cannot hold that due process has been violated herein.

There are other assigned errors which are too trivial to warrant discussion. We have examined them but find no merit therein.

The decree of the Board will be affirmed.

## ON RECONSIDERATION
July 26, 1946

*Joaquín Velilla* for petitioner. *Ismael Soldevila* for the respondent Board.

Mr. Justice Córdova delivered the opinion of the court.

The petitioner requested the reconsideration of our judgment of May 10, 1946, insisting that the decree of the Board is null and void because it considered evidence which was not introduced at the public hearing, and calling our attention to the fact that although, as we pointed out in our opinion of May 10, 1946, the record does not show that the Board considered such evidence, the petitioner timely raised the question in due course before the Board, without being given an opportunity to prove the point. On May 21 we issued an order suspending the effects of the judgment of May 10 and remanding the case to the Board to hear evidence and determine whether in issuing the decree the Board had considered reports which had not been presented in evidence.

The Board held the hearing, has rendered its findings, and the parties have been heard regarding the same. The findings and the transcript of the evidence show that after the public hearing had ended, the then Chairman of the Board

ordered certain employees of the Board to examine the books of the petitioner and other producers who testified at the public hearing regarding their production costs. The investigation was made and reports were rendered to the then Chairman of the Board, who read them. The Chairman of the Board was charged with studying the case and proposing to the Board the proper decree, which he did, and his proposed decree was approved with slight amendments, the nature of which does not appear from the record.

The Chairman did not advise the Board of the investigation and reports received after the public hearing was held and the other members of the Board never learned of the investigation or the reports. The reports tended to contradict or challenge the data regarding production costs which were introduced in evidence by the petitioner and the other producers at the public hearing.

It appears, therefore, that one of the members of the Board, the very member to whom the Board entrusted the analysis of the case and the preparation of the draft of the decree, received, after the case had been submittd, secret or confidential evidence, which challenged the veracity and the weight of the evidence introduced by the producers. The producers were not given an opportunity to examine, contest, or explain that secret evidence. But the former Chairman of the Board, who had before him that secret evidence, tells us that he did not use that evidence, that he did not take it into consideration, and that it did not affect his opinion. We do not doubt the sincerity of the assertions of the ex-Chairman, whose frank testimony deserves our respect. However, we do not see how the ex-Chairman could weigh the producer's evidence, after knowing the secret contradiction of that evidence made by employees in whom we must assume he had confidence, with the same impartiality with which he would have weighed it before reading the report of his employees.

The fact that the remaining members of the Board were not acquainted with the confidential reports with which its president was familiar has no great importance since the study, analysis, and recomendations made by the Chairman served to guide the Board in its deliberations and undoubtedly had a decisive effect in the final action of the Board.

We have already decided that the Board should act on the basis of the evidence received at the public hearing and that to this effect it is essential to the validity of its decrees that its members should be acquainted with the evidence and the contentions of the parties. *Luce & Co.* v. *Minimum Wage Board* 62 P.R.R. 431. " . . . otherwise" we then stated, "it cannot be said that a public hearing has been previously held as required by law" Nor can it be said that a public hearing has been held when the Board or one of its members requests and obtains secret evidence which destroys or modifies the effect of the evidence introduced publicly, without giving the interested parties an opportunity to become acquainted with, explain, or contest that secret evidence. See *Ohio Bell Tel. Co.* v. *Commission,* 301 U. S. 292, 81 L. ed. 1093; *United States* v. *Abilene & Southern Railway Company,* 265 U. S. 274, 68 L. ed. 1016. Cf. *Norwegian Nitrogen Co.* v. *United States,* 288 U. S. 294, 77 L. ed. 796. As Mr. Justice Cardozo said in *Ohio Bell Tel. Co.* v. *Comm'n.* 301 U. S. 304, 305:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. *West Ohio Gas Co.* v. *Public Utilities Comm'n* (No. 1), *supra,* p. 70; *West Ohio Gas Co.* v. *Public Utilities Comm'n* (No. 2), 294 U. S. 79; *Los Angeles Gas & Electric Corp.* v. *Railroad Commission,* 289 U. S. 287, 304. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the "inexorable safeguard" (*St. Joseph Stock Yards Co.*

570

v. *United States,* 298 U. S. 38, 73) of a fair and open hearing be maintained in its integrity. *Morgan* v. *United States,* 298 U. S. 468, 480, 481; *Interstate Commerce Comm'n* v. *Louisville & N.R. Co., supra.* The right to such a hearing is one of "the rudiments of fair play" (*Chicago, M. & St. P. Ry. Co.* v. *Polt,* 232 U. S. 165, 168) assured to every litigant by the Fourteenth Amendment as a minimal requirement. *West Ohio Gas Co.* v. *Public Utilities Comm'n* (No. 1), (No. 2), *supra; Brinkerhoff-Faris Co.* v. *Hill,* 281 U. S. 673, 683. Cf. *Norwegian Nitrogen Co.* v. *United States, supra.* There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored."

The requisite of a public hearing, complied with by the Board in the first instance in the case at bar, was violated when subsequently the President of the Board received secret evidence of such a nature that it could not fail to affect his judgment. As in the case of *Luce & Co., supra,* the violation of the requisite of a public hearing fixed by the statute carries with it the nullity of the decree.

For the reasons stated, our judgment of May 10, 1946 should be vacated, and another rendered instead setting aside decree No. 10 of the Minimum Wage Board and remanding the case to the Board for further proceedings not inconsistent with this opinion.