O’Neill, J.
The commission found the statutory rate base of the appellant company for this rate determination to he $59,827,440, and the appellant agrees that this is correct.
This is the dollar-amount value as of a date certain of the *576 reconstruction cost new less existing depreciation of the property of the public utility, used and useful, in rendering the public utility service for which rates are to be fixed. See paragraph numbered 1, page 443, of the per curiam opinion in City of Cleveland v. Public Utilities Commission, 164 Ohio St., 442, 132 N. E. (2d), 216.
The commission found that the appellant was entitled to a rate of return upon the statutory rate base of 5.8%. See paragraph numbered 2, page 443, of the per curiam opinion in City of Cleveland v. Public Utilities Commission, supra.
The commission found, and it is agreed, that multiplying this 5.8% rate of return by the statutory rate base results in an annual dollar return of $3,469,992 to which the appellant is entitled. See paragraph numbered 3, page 443, of the per curiam opinion in City of Cleveland v. Public Utilities Commission, supra.
It is a simple matter then to determine the actual annual expenses of the company for wages, maintenance, taxes, etc., and calculate the rates required to produce the annual dollar return, plus the annual expenses. See paragraph numbered 4, page 443, of the per curiam opinion in City of Cleveland v. Public Utilities Commission, supra. This is in accord with the steps laid down for determinatoin of rates by the Public Utilities Commission in City of Cleveland v. Public Utilities Commission, supra, in the per curiam opinion at pages 443 and 444 in paragraphs numbered 1 through 6, inclusive.
The error complained of here is that the commission allowed, as an item of expense for federal income taxes, $112,017 less than the amount the federal income tax law requires the appellant to pay upon the annual dollar return which the commission has found the appellant is entitled to receive.
The income tax which the company is required to pay to the federal government under the income tax law on its annual dollar return can be calculated mathematically according to the federal income tax law to an exact accurate amount.
However, instead of allowing this known exact and accurrate expense for taxes to the appellant, the commission chose a different procedure.
At this point in the computation of allowable rates, the *577 commission created a hypothetical public utility company. This was done by capitalizing the statutory rate base and thus converting the statutory rate base {i. e., the dollar-amount value of the public utility’s property) into a capitalization rate base composed of fictitious amounts of debt and fictitious amounts of equity.
This is contrary to law (Sections 4909.04, 4909.05 and 4909.15, Eevised Code).
This is contrary to the decisions of this court in a long line of cases in which the court has held, and repeatedly reaffirmed the proposition, that, for purposes of rate making, the statutory rate base of a public utility company is the dollar value of its property, used and useful, in rendering the public utility service, and that the value is to be found by a determination of the reconstruction cost new less existing depreciation of the prop-of the public utility. Lima Telephone S Telegraph Co. v. Public Utilities Commission, 98 Ohio St., 110, 120 N. E., 330; Lindsey v. Public Utilities Commission, 111 Ohio St., 6, 144 N. E., 729; East Ohio Gas Co. v. Public Utilities Commission, 133 Ohio St., 212, 12 N. E. (2d), 765; City of Marietta v. Public Utilities Commission, 148 Ohio St., 173, 74 N. E. (2d), 74; City of Cleveland v. Public Utilities Commission, supra (164 Ohio St., 442), per curiam opinion, page 443, paragraph numbered 1; and Ohio Edison Co. v. Public Utilities Commission, 173 Ohio St., 478, 184 N. E. (2d), 70, paragraph four of the syllabus.
It can be noted here that all counsel appearing before this court in the oral reargument of this and related public utility cases asserted the position that the “hypothetical company concept” was either unsound regulatory practice or unconstitutional, unlawful and arbitrary, though for different reasons.
The result in this case of this creation of a “hypothetical company” is to create a fictitious debt for the appellant and to create an increased obligation upon the appellant for the payment of $1,243,633 hypothetical interest upon this fictitious debt, when the interest actually paid by the appellant is $1,028,215.
It is apparent that the increased hypothetical interest obligation is $215,418 in excess of the amount which the appellant is actually required to pay. It is admitted that this procedure results in an expense allowance, for federal income tax pay *578 ment, of an amount -which is $112,017 less than the appellant is actually required to pay the federal government under the income tax law on the annual dollar return which the commission has determined the appellant is entitled to receive.
The commission computed the expense item for income tax by taking the allowed annual dollar return of $3,469,992 and deducting from it hypothetical interest of $1,243,633, which left taxable income of $2,226,359.
This taxable income of $2,226,359 multiplied by the federal income tax rate of 52% gives a tax due of $1,157,706.68.
However, when the company goes to compute its tax the federal income tax law will not permit the deduction of hypothetical interest. The law requires that only the actual interest paid can be deducted.
Under the federal income tax law the tax must be computed by taking the allowed annual dollar return of $3,469,992 and deducting from it the actual interest paid of $1,028,215, which leaves a taxable income of $2,441,777. This multiplied by the 52% tax rate gives a tax which the company must pay of $1,269,724.04.
The commission allowed as expense for income tax $1,157,706.68. The company is required by law to pay $1,269,724.04. The commission allowed $112,017.36 less than the company is required to pay by the federal tax law. This is admitted by the commission.
The result of this is to compel the appellant to divert $112,017 of the annual dollar return which it is entitled to receive for the use of its property to pay the expense of federal income taxes. This means that the appellant actually has $112,017 less dollars for its annual dollar return than the commission has found it is entitled to receive, i. e., $3,357,975 instead of $3,469,992.
The commission found that the appellant was entitled to a rate of return of 5.8%. The amount of $3,357,975 is a 5.8% return on a rate base of $57,896,121. This is $1,931,319 less than the rate base ($59,827,440) which the commission found to be the statutory rate base in this case.
It is apparent that the creation of this “hypothetical com *579 pany” has as its ultimate purpose the reduction of the statutory rate base, which is a circumvention of the law of Ohio. It should be noted that the rate base arrived at by the hypothetical-company procedure was not determined by finding the reconstruction cost new less existing depreciation of the property of the public utility company, used and useful, in rendering a public utility service, as required by the statutes of Ohio and the decisions of this court. It is $1,931,319 less than the statutory rate base and it is a figure which is unrelated to the capitalization of the actual company, to the book value of the actual company and to the statutory rate base of the actual company. This is arbitrary and contrary to law. Lima Telephone & Telegraph Co. v. Public Utilities Commission, supra; Lindsey v. Public Utilities Commission, supra; East Ohio Gas Co. v. Public Utilities Commission, supra; City of Marietta v. Public Utilities Commission, supra; City of Cleveland v. Public Utilities Commission, supra, per curiam opinion, page 443, paragraph numbered 1; and Ohio Edison Co. v. Public Utilities Commission, supra, paragraph four of the syllabus.
If it is argued that the statutory rate base dollar amount is not reduced, then it must be conceded that an annual dollar return of $3,357,975 is a return of only 5.61% on a rate base of $59,827,440, whereas the commission has held that the appellant is entitled to an annual fair rate of return of 5.8%. This reduction in the annual fair rate of return is arbitrary and contrary to law.
At first it was argued, in defense of this unusual procedure, that income tax was not an item of expense, but part of the cost of capital. This contention was disposed of in City of Cincinnati v. Public Utilities Commission, 153 Ohio St., 56, 90 N. E. 126), 681, paragraph two of the syllabus of which reads:
“The general rule is that validly imposed taxes of all kinds paid by a utility may properly be considered as an operating expense of such utility for rate-making purposes.”
Such holding was reaffirmed in Ohio Edison Co. v. Public Utilities Commission, supra, where the court said, in discussing this exact problem, at page 490:
“The commission should not have so reduced the amount allowed as expense for federal income tax.”
*580 It is now contended that this procedure is justified because there is a tax advantage to the company.
This position is equally untenable. There is no tax advantage because the federal income tax law does not permit the deduction of hypothetical interest in computing income tax. The federal law allows for the deduction of only the amount of interest actually paid. To argue that this is a tax advantage is to assert, in simple words, that it is a tax advantage for a company to be allowed, as expense for income taxes, an amount less than the amount of taxes which it is actually required to pay under the law. It is evident that there is no tax advantage here, but rather a disadvantage which results in the appellant’s annual dollar return to which it is entitled being reduced arbitrarily and either its statutory rate base, which has been determined and agreed upon, being reduced arbitrarily and unlawfully, or the annual fair rate of return which the commission has held it is entitled to receive being reduced arbitrarily and unlawfully.
In East Ohio Gas Co. v. Public Utilities Commission, 133 Ohio St., 212, the commission allowed less for income tax than the company was actually required to pay. Judge Gorman, in his opinion at page 226, said:
“* * * An allowance for the payment of federal income taxes must be made in rate cases. * * *
i i # # #
í í * * * The finding is therefore reversed and remanded with instructions to determine the amount of taxes actually paid or which will be paid during the ordinance period and charged against The East Ohio Gas Company.”
Likewise, the commission allowed less for the payment of excise taxes than the company was required to pay, on the ground that an improvement in economic conditions might result in increased sales for the company, with resulting gains that would more than offset the increased expenses of operation. The court said, at page 227:
“Such a ruling is predicated upon a speculative assumption that neither court nor commission can make. To withhold a complete allowance for taxes because business may improve is mere guess work. ‘To prefer forecast to experience in such *581 cases is arbitrary.’ (Syllabus) West Ohio Gas Co. v. Public Utilities Commission, 294 U. S., 79, 79 L. Ed., 773, 55 S. Ct., 324.
“It being conceded that during the ordinance period the company would be called upon to pay 2.96% for excise taxes, such an amount should be allowed. The finding of the commission that only 2.26% be allowed is hereby reversed, and the commission is instructed to allow the percentage of 2.96% as that actually paid. To do otherwise would be to permit admitted confiscation.”
This court is not passing upon the other alleged errors concerning rate of return and depreciation accrual rates. The commission may re-examine these matters and make a determination concerning each, based upon the competent evidence in the record.
The order is reversed and the cause remanded for further proceedings.

Order reversed.

Zimmerman, Matthias, Griffith and Herbert, JJ., concur.