## No. 25455

The Mountain States Telephone and Telegraph Company, a Colorado corporation v. The Public Utilities Commission of the State of Colorado and Henry E. Zarlengo, Howard S. Bjelland, Edwin R. Lundborg, Commissioners; and Colorado Municipal League

(502 P.2d 945)

Decided October 30, 1972.        Rehearing denied November 27, 1972.

Laurence W. DeMuth, Jr., Cotton Howell, T. M. Ledingham, for plaintiff-appellant.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, John E. Archibold, Assistant, Irwin M. Kent, Assistant, for Public Utilities Commission.

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, Richard B. Harvey, Howard J. Beck, Special Counsel for Colorado Municipal League.

Kenneth G. Bueche, General Counsel for Colorado Municipal League.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

On April 2, 1968, The Mountain States Telephone and

Telegraph Company (Mountain Bell) filed an application with the Public Utilities Commission (Commission) for determination of a reasonable rate of return on intra-state telephone service. Hearings were held on the application during 1968 and on January 7, 1969, the Commission approved an increased rate of return of 7.5% to become effective as of July 19, 1969. The Colorado Municipal League and the City and County of Denver sought review of the Commission findings in the district court. That court affirmed the order of the Commission, and the League and Denver appealed to this court.

On this appeal, in *Colorado Municipal League v. Public Utilities Commission,* 172 Colo. 188, 473 P.2d 960 (1970), we affirmed the district court on four of the issues, and reversed and remanded as to the remaining two. We held that the Commission abused its discretion in not imputing tax benefits which would have accrued to Mountain Bell had it availed itself of an accelerated method of depreciation under § 167 of the Internal Revenue Code. We further ruled that the Commission acted arbitrarily and capriciously in awarding Mountain Bell additional annual revenue in the amount of approximately $1,200,000 to compensate for abnormal inflation. In remanding the cause to the district court, we said:

"We assume that pending review the Commission has approved new rates which are now being charged by Mountain Bell in order to produce the revenue permitted by the Commission's order. We have concluded that under the circumstances of the case the adjustment of rates to reflect the changes necessitated by this opinion should be made effective as of the time such new rates went into effect. In other words, at all times under the Commission's order Mountain Bell's customers should have the benefits of the imputation of a method of accelerated depreciation and of the elimination of the allowance for abnormal inflation."

By the Tax Reform Act of 1969, adopted December 30, 1969, § 167 of the Internal Revenue Code was amended to provide that a utility could not adopt an accelerated method

of depreciation with flow-through if it had not reported accelerated depreciation with flow-through in a tax return filed prior to August 1, 1969. The effect of this amendment was not argued to the court but was raised by Mountain Bell in a petition for rehearing. In response, we amended our opinion by saying:

"Our opinion of necessity is predicated upon the provisions of the Internal Revenue Code as they existed at the time the Commission held its hearings. The effect of any subsequent amendments to the Code should first be considered and determined by the Commission."

The district court then remanded the cause to the Commission for further proceedings consistent with our opinion.

Mountain Bell concluded to use an accelerated method of depreciation both in its income tax returns and for bookkeeping purposes. It moved the Commission for permission to change its bookkeeping methods from straight line depreciation to a normalization method of accounting for depreciation. The Commission denied the motion.

The material portions of the Commission's order on remand were as follows:

"1. Applicant [Mountain Bell] shall, pursuant to the Supreme Court of Colorado's Decision in *Colorado Municipal League, et al. vs. Public Utilities Commission, et al.*, supra, refund to its customers the following:

a) Revenues derived from the application of the one percent (1%) inflation factor applied to gross revenues since July 19, 1969 to the effective date of a negative rider to be ordered herein.

b) Revenues equal to income tax savings that would have resulted from taking accelerated depreciation for the calculation of income taxes — flow-through basis from July 19, 1969 through December 31, 1969.

c) Revenues equal to the reduction in revenue requirements that would have resulted from taking accelerated depreciation for income tax purposes on a normalized and deferred account basis from January 1, 1970 to the effective date of a

negative rider to be ordered herein.

"2. The amounts in 1(a), (b) and (c) above shall be calculated by applying the following factors to gross revenues as defined herein in the applicable effective periods.

| | | PERIODS | |
|---|---|---|---|
| | | 7-19-69 To 12-31-69 | 1-1-70 To Effective Date of New Rates |
| | | % | % |
| a) | 1% inflation element | .99009877 | .99009877 |

Accelerated depreciation tax effects

| | | | |
|---|---|---|---|
| b) | Flow-Through | .79722102 | |
| c) | Normalization | | .02989585 |
| | TOTAL | 1.78731979 | 1.01999462 |

"3. Applicant shall pay to its customers simple interest at the annual rate of seven and one-half percent (7-1/2%) on the refund amounts for the monthly periods collections are held.

"4. Costs of making refunds to customers in the amount of $71,000 shall be deducted from the amount of interest calculated in ordering provision No. 3 above.

"5. Any refunds remaining unclaimed on December 31, 1971 shall be handled in accordance with Article 8, Chapter 115, CRS 1963, as amended.

"6. The request that Protestant's attorney fees and costs be paid out of the refund amount be, and hereby is, denied.

"7. The motion of Applicant, in Application No. 23116, for authority to take accelerated depreciation for book accounting purposes, specifically stated in its motion 'Use of the normalization method of accounting described in Section 167(1)(3)(G)(i) of the Internal Revenue Code, as amended, both for the purpose of establishing any amount of refund

due under the Colorado Supreme Court's Decision in *Colorado Municipal League, et al. vs. Public Utilities Commission, et al.,* supra, and for the purpose of accounting and/or rate making from January 1, 1970 forward,' be, and hereby is, denied."

Mountain Bell thereafter sought review of those parts of the Commission's order which (1) ordered a refund to customers and (2) denied Mountain Bell the authority to take accelerated depreciation for book and ratemaking purposes. The Colorado Municipal League (League) sought review of those parts of the Commission's order which (3) authorized Mountain Bell to deduct the cost of making a refund from interest accruing on the refund amount and (4) denied the League request for deduction of attorney fees and expenses from interest accruing on the refund amount. The district court affirmed the Commission's order in all respects and both parties are once again before this Court. We affirm as to (1), (2) and (3) and reverse as to (4).

## I. The Refund

The period of time involved in the Commission's refund order is July 19, 1969 (date the 7.5% rate took effect) to March 25, 1971 (date the Commission authorized new rates). During the December 1970 remand hearings Mountain Bell offered evidence to show that a refund was not in fact due because, during the refund period, Mountain Bell suffered a revenue deficiency even after adjusting the approved 7.5% rate of return by excluding the allowance for abnormal inflation and by imputing accelerated depreciation for tax purposes. The Commission refused to consider this evidence, stating correctly:

"Applicant's testimony relative to the proposition that customers suffered no excess charges because of purportedly increased costs of doing business, was outside the order of the Supreme Court. The Supreme Court relied on costs of service in the test year upon which rates were set and thus the Commission must amend its Decision No. 72385 so as to be in compliance with the Supreme Court's order. Applicant's proposition that it make no refund because of

increased costs would set the stage for guaranteed earnings and rate of return. The result would be that as earnings fluctuate above or below a stated rate of return the Company could immediately increase its rates and by the same reasoning immediately refund amounts earned over the stated return. Public utility regulation does not guarantee a predetermined rate of income and if it could and did then the cost of capital would be reduced accordingly. This Commission regulates rates and not revenues. There is no way to insure either the company or its customers that approved rates will not produce revenues above or below an approved rate of return. Just as the Company is not guaranteed certain earnings, the customers are not guaranteed that revenues will not exceed an approved rate of return. Such financial security cannot be assured by regulation's function of being a substitute for competition."

We agree that the Commission properly refused to consider the evidence offered by Mountain Bell. Mountain Bell, however, argues that the evidence should have been considered because the amount of a refund must be determined from facts as they actually existed during the period an erroneous rate order was in effect. In support of this proposition, Mountain Bell relies primarily on *West Ohio Gas Company v. Public Utilities Commission of Ohio,* 294 U.S. 79, 55 S.Ct. 324, 79 L.Ed. 773 (1935). *West Ohio Gas Company* was a rate-making case, not a refund case. The court there held that the Ohio Public Utilities Commission could not hand down an original rate order in 1933, based solely on a test year of 1929, where evidence as to actual revenues and expenses for the intervening years of 1930 and 1931 was available.

The facts here are not comparable. The Commission, in establishing original rates for Mountain Bell by order of January 7, 1969, received evidence during the year 1968, using 1967 as the test year. On appeal, the rate order was found to be legally erroneous in two particulars only, and the case was remanded to the Commission for correction of those errors, not for original rate making.

Other cases cited by Mountain Bell in support of their proposition are equally inapplicable since they are rate making cases with facts similar to *West Ohio Gas Company,* or involve confiscatory rates (which is not claimed here), or are so factually dissimilar from the instant case as to be inapplicable.

Mountain Bell next argues that when a rate is approved by a regulatory commission and is collected without suspension or bond, the rate is not subject to refund. In support of this contention, Mountain Bell cites *Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co.,* 284 U.S. 370, 52 S. Ct. 183 76 L.Ed. 348 (1932), and a long list of additional cases. *Arizona Grocery Co.* stands for the proposition that when a regulatory commission fixes rates for the future in one proceeding it cannot, in a subsequent proceeding, decide that the previously approved rates were unreasonable and thereupon establish lower rates with retroactive effect. This rule is not applicable to the facts before us. This Court, on appeal, not the Commission in a subsequent proceeding, decided that a portion of the 1969 rate order was in error. This Court, not the Commission, found that benefits resulting from the correction of those errors should be passed on to Mountain Bell's customers.

Mountain Bell has emphasized the fact that the 1969 rate order was not suspended under bond during appeal, pursuant to C.R.S. 1963, 115-6-16 (amended in 1969). This statute provides that a party petitioning for review of a rate order may have the order stayed pending appeal after a finding that "great or irreparable damage would otherwise result to the petitioner" and after the party petitioning for review has filed a suspending bond which will ensure the prompt payment "of all damages caused by the delay in the enforcement of the order or decision of the commission." The original version of 115-6-16 (L. 13, p. 498, § 53) is substantially similar to the present section. This original version was interpreted in *Denver Co. v. C. B. & Q. Co.,* 67 Colo. 155, 185 P. 817 (1919), to be permissive only. It was stated that suspension of a Commission order was not a

mandatory requirement for appellate review of the order, and that the Commission may order restitution in a proper case. Amendments to the original version of the statute do not provide any basis for altering this interpretation.

▮ Insofar as cases from other jurisdictions cited by Mountain Bell support the rule that a rate is not subject to refund if it is approved by a regulatory commission and collected without suspension or bond, we are not compelled to follow those decisions and choose not to do so. This Court may, on review of a Commission rate order, require correction of legal errors contained in the order and provide that benefits arising from those corrections be passed on to customers of the utility. *See Bebchick v. Public Utilities Commission,* 318 F.2d 187 (D.C. 1963), *cert. denied,* 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963); and *Williams v. Washington Metropolitan Area Transit Com'n.,* 415 F.2d 922 (D.C. 1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969); *cf. United Gas Pipe Line Co. v. Mobile Gas Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); and *Baltimore & Ohio R. Co. v. United States,* 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1929).

▮ Mountain Bell further ·argues that the Commission acted arbitrarily and capriciously by ordering a refund to customers of revenues equal to income tax savings that would have resulted from taking accelerated depreciation on a flow-through basis from July 19, 1969 through December 31, 1969. Mountain Bell states that, under the Tax Reform Act of 1969, a utility could adopt a method of accelerated depreciation on pre-1970 property only if accelerated depreciation was used on tax returns filed before August 1, 1969. Because it did not report accelerated depreciation on a tax return prior to August 1, 1969, Mountain Bell claims that no income tax benefits were available to be flowed-through to its customers.

Whether Mountain Bell could or could not report accelerated depreciation with flow-through on its tax return for the refund period is irrelevant. Following the original 1968 rate hearings, the Commission found in essence that Mountain

Bell's management had abused its discretion to the detriment of its customers by failing to adopt an accelerated method of depreciation during the 1967 test year. It is that abuse and that detriment which is being corrected by the imputation of an accelerated method of depreciation with flow-through for the period July 19, 1969 through December 31, 1969.

In the refund order, the Commission discussed its reasons for imputing accelerated depreciation with flow-through for the period July 19, 1969 to December 31, 1969:

"The Tax Reform Act of 1969 does not permit a Company taking accelerated depreciation for income tax purposes to flow-through the tax savings if it had not been so doing prior to January 1, 1970. Mountain States Telephone and Telegraph Company did not avail itself of the opportunity to take accelerated depreciation for income tax purposes prior to January 1, 1970 but did advise the Public Utilities Commission that for the year 1970 the Company will use accelerated depreciation for income tax purposes. Therefore, the imputation of accelerated depreciation for flow-through income tax purposes can be considered only for the period from July 19, 1969 to December 31, 1969. The imputation of accelerated depreciation beginning January 1, 1970 to the end of the refund period, because of the 1969 Revenue Code, must be on a normalized basis for Applicant with provision for a deferred income tax reserve."

We do not necessarily agree with the Commission's legal interpretations and conclusions. In particular, we question the date of January 1, 1970, in the first sentence of the last quotation. Further we question the Commission's conclusion that "the imputation of accelerated depreciation for flow-through income tax purposes can be considered only for the period July 19, 1969 to December 31, 1969." Under our theory of the case, accelerated depreciation with flow-through might well have been imputed to Mountain Bell for the entire refund period. However, all parties to this case have stipulated that the issue of whether an accelerated method of depreciation with flow-through is imputable to Mountain Bell for the period after January 1, 1969 is not at

issue before this court. For this reason, we affirm that part of the Commission's order imputing an accelerated method of depreciation with flow-through only for the period July 19, 1969 to December 31, 1969.

■ In paragraph 3 of the refund order, the Commission ordered Mountain Bell to pay its customers simple interest at the annual rate of 7 1/2% on the refund amount. By one sentence in its reply brief Mountain Bell contends here that this portion of the refund order is unlawful.

On review of the Commission's order, the district court made the following finding:

"When the stay order [from payment of refund during review] was requested by Mountain Bell before Judge McNamara, the order provided in paragraph 5 of his ruling that, in the event PUC's order is ultimately sustained on appeal, all sums which may be refunded pursuant to Commission's decision and that stay order shall continue to draw interest at the rate of 7-1/2% per annum as provided in PUC's original order, and that this was agreed and accepted by all the parties to be a proper figure as the stay order was prepared and submitted by counsel for Mountain Bell and the record discloses no objection as to the interest rate."

The court concluded and we agree that the 7 1/2% interest on the refund amount was proper under the circumstances.

## II. Accelerated Depreciation for Book and Rate Making Purposes

The Internal Revenue Code in § 167(1)(3)(G)(i) and (ii) permits a utility to report accelerated depreciation using a normalization method of accounting. Under sub-section (i) both a company's books and its tax rate reflect the accelerated depreciation. Under sub-section (ii) a company may report the accelerated method on its tax return but retain straight line on its books, *i.e.,* it has two sets of books in this particular, one for income tax purposes and one for other financial purposes.

■ In denying Mountain Bell's motion to change its bookkeeping method to that described in § 167(1)(3)(G)(i), the Commission found that there was a lack of evidence to

show that the proposed change was essential for proper and adequate rendition of intra-state telephone service. It found that this change would result in higher rates to Mountain Bell's customers. We, however, are more favorably impressed with the showing of Mountain Bell in this respect than with the showing of the League. Were we the Commission, we would have granted the motion. However, there is evidence to support the Commission's ruling and we cannot say it was arbitrary or capricious. There is no alternative, therefore, but to affirm. *B.D.C. Corporation of Colorado v. Public Utilities Commission,* 167 Colo. 472, 448 P.2d 615 (1968).

We point out the fact that the thrust of our former opinion was directed to the flow-through method of accounting, which is now prohibited to Mountain Bell for tax purposes by the Tax Reform Act of 1969.

### III. Cost of Making Refund

The Commission found that costs of making the refund in the amount of $71,000 was a proper offset against interest payable on the refund amount. The League contends that this offset should not be allowed. As a part of its argument, the League states that Mountain Bell's destruction of certain computer tape unnecessarily magnified the cost of making a refund by requiring some manual processing. The League made this same argument to the Commission. We may infer from the Commission's finding that it was not persuaded by the argument.

The League has failed to present any argument or authority which persuades us that the Commission's finding should be reversed. A different result might have been reached if the Commission had offset the cost of the refund against the refund amount itself rather than against interest accruing on the refund.

### IV. Attorneys' Fees and Costs

The Colorado Municipal League asked the Commission for an award of reasonable attorneys' fees and expenses incurred by it in the various proceedings in which it opposed the 1969 Mountain Bell rate increase. The League suggested that the amount of such fees and expenses could be deducted

from interest accruing on the refund amount.

The Commission denied the League's request after finding that it had no jurisdiction to award attorneys' fees and expenses. One member of the Commission dissented from the Commission's finding, expressing the opinion that C.R.S. 1963, 115-3-2 gave the Commission jurisdiction to award reasonable attorneys' fees and expenses, and that in this case such an award would not only be legal but equitable. He stated:

"Without the monies paid out and the aggressive and well taken action on the part of the League, higher rates may have been established and, for certain, the refund would have been lost to the ratepayers who now have lower rates and would enjoy an unjust enrichment if the order [denying attorneys' fees and expenses] is allowed to stand."

The Commission impliedly found that it had jurisdiction to allow Mountain Bell to offset costs of making the refund from interest accruing on the refund amount. It follows that the Commission also had jurisdiction to award reasonable attorneys' fees and expenses to the League from that interest. Whether or not such an award would be equitable and proper under the circumstances of the case is, of course, a question to be decided by the Commission and not initially by this court.

## V.

The payment of the bulk of the refund to Mountain Bell's customers should not be further delayed by any hearing before and a determination by the Commission as to attorneys' fees and other expenses. The district court should direct the Commission that, if it appears that this subject will delay the refund, the refund shall proceed, except as to an amount determined by the Commission to be adequate to pay any League fees and other expenses which may be awarded, as well as other costs or expenses which may be attendant to the hold-back. This retained amount should be paid by Mountain Bell, and should be held in accordance with the Commission's order. The retained moneys should be devoted to the payment of any such fees, expenses and costs

ordered by the Commission, and any part not so applied should be refunded to Mountain Bell's customers.

The judgment of the district court is affirmed in part and reversed in part as stated; and the cause is remanded to the district court for proceedings consonant with the views expressed in this opinion.