PAROWAN PUMPERS ASSOCIATION, Cedar Valley Pumpers Association, and Beryl Pumpers Association, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION of Utah, Milly O. Bernard, Olof E. Zundel and Kenneth Rigtrup (As successor to Joseph C. Foley), Commissioners of the Public Service Commission of Utah, Respondents.

CALIFORNIA–PACIFIC UTILITIES COMPANY, a corporation, Plaintiff,

v.

PUBLIC SERVICE COMMISSION of Utah, Milly O. Bernard, Olof E. Zundel and Kenneth Rigtrup (As successor to Joseph C. Foley), Commissioners of the Public Service Commission of Utah, Defendants.

Nos. 15143, 15144.

Supreme Court of Utah.

Oct. 5, 1978.

---

1. *Fox Film Corp. v. Ogden Theatre Co.*, 82 Utah 279, 17 P.2d 294 (1932); *Lamb v. Bangart*, Utah, 525 P.2d 602 (1974).

Elliott Lee Pratt of Clyde & Pratt, Grant MacFarlane, Jr. and Douglas Matsumori of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for plaintiffs.

Robert B. Hansen, Atty. Gen., Stephen R. Randle, James L. Barker, Jr., Asst. Attys. Gen., Salt Lake City, for defendants.

WILKINS, Justice:

California-Pacific Utilities Company (herein "Cal-Pac") applied to the Public Service Commission of Utah (herein "Commission") for an increase in the rates charged to its customers to recover annual expenses incurred in the construction of a new transmission line. Petitioners, named above, (herein "Consumers") protested the rate increase. The Commission allowed 53.03% of the requested increase and Cal-Pac and the Consumers each seek review of the report and order of the Commission. The interests of Cal-Pac and Consumers are adverse to each other, and the two cases have been consolidated. All references to statutes are to Utah Code Annotated, 1953, as amended.

Cal-Pac provides electric service to consumers in Washington County, Iron County and parts of Kane County, Utah. Until 1975, service to the company's "Cedar City District" was by means of a 138 KV transmission line, which had a normal capacity of 40 to 50 megawatts.

In 1962, Cal-Pac entered into a wheeling agreement with the United States Bureau of Reclamation (herein "Bureau") by which Cal-Pac agreed to transmit power from the Colorado River Storage Project to the Bureau's preference customers, and committed its lines to the extent of 40 megawatts for this purpose during the term of the wheeling agreement and renewals and extensions thereof, a period of 85 years. The wheeling rate payable by the Bureau and fixed by the agreement is $4.20 per kilowatt year, and the contract has no provision for any increase in that rate.

Cal-Pac acquires most of its power requirements by purchase from Utah Power and Light Company (herein "UP&L"). In 1972 Cal-Pac began negotiations with UP&L to purchase power, commencing in 1975, prompted by the expiration in 1975 of a contract between Cal-Pac and the Bureau

whereby Cal-Pac purchased power from the Bureau. As a part of these negotiations, Cal-Pac and UP&L agreed that UP&L would construct a new 230 KV line in its service area from Sigurd, Utah, to the Iron County line to provide added transmission capacity which Cal-Pac would require to replace the existing 138 KV line. This agreement was formalized in a contract entitled "Electric Service Agreement" entered into between Cal-Pac and UP&L on March 26, 1975. Meanwhile, the new 230 KV line was constructed by UP&L and energized in August, 1976. At the time the line was energized, the load carried on the 138 KV line at peak demand was approximately 74 megawatts, of which 41 megawatts were required for Cal-Pac's customers, and 33 megawatts were required for the Bureau under the wheeling agreement.

By the "Electric Service Agreement" of 1975, Cal-Pac agreed to pay to UP&L all of UP&L's annual fixed charges, consisting of all of the costs of constructing the 230 KV line, half the costs of constructing the terminal facilities at Sigurd, (an investment of $4,400,000) all interest, taxes, costs of maintenance and operation and a 9.5% return to UP&L on its investment. The formula results in an annual cost to Cal-Pac of $856,-910 for a period of 45 years. It is this amount which Cal-Pac wishes to have "passed through" to its 9,000 customers in the Cedar City District as a fixed annual expense for the purchase of power from UP&L.

After a number of public hearings on the proposed rate increase, the Commission found that both the wheeling agreement and the UP&L contract were required by law to be submitted to the Commission for its approval; that neither contract had been submitted, and had never been approved; that neither contract was in the best interest of the public or of the customers of Cal-Pac; that had Cal-Pac not been wheeling power for the Bureau the construction of this new transmission line would not have been necessary; that the Commission had jurisdiction over the rates charged for all intrastate utilities including the wheeling rates; and that the Commission had the power to modify or amend the contracts.

In its order, the Commission nevertheless granted 53.03%[1] of the requested increase and ordered Cal-Pac to negotiate with the Bureau for an increase in the wheeling rate.

The Commission's order is not supported by its findings, and in fact is hostile to them. The findings and order are irreconcilable and that irreconcilability is fatal. The Commission found that the UP&L contract was not in the public interest but based a rate increase on the terms of that contract. The Commission found that the construction of the transmission line was not a necessary expenditure for the purpose of supplying service to the customers of Cal-Pac but granted an increase which requires those customers to pay 53% of the cost of that construction. Also there is no finding that the increase granted is reasonable; on the contrary, the implication of the findings is that the increase is not reasonable.

As we are unable to correlate the findings with the Commission's order, we reverse and remand the case to the Commission to take such action, including further hearings, if necessary, as it deems advisable for the purpose of achieving a harmonious relationship between its findings and order.

ELLETT, C. J., and MAUGHAN and HALL, JJ., concur.

CROCKETT, J., concurs in result.

1. This represents the percentage of the total kilowatts transmitted for use by Cal-Pac's customers, the remainder being the power wheeled for the Bureau.