COMMITTEE OF CONSUMER SERV-
ICES; Parowan Valley Pumpers Associ-
ation, Cedar Valley Pumpers Association
and Beryl Pumpers Association; Enter-
prise Valley Pumpers, Inc., Petitioners,

v.

PUBLIC SERVICE COMMISSION OF
UTAH; Milly O. Bernard, Chairman;
Kenneth Rigtrup, Commissioner; David
R. Irvine, Commissioner, Respondents.

No. 16891.

Supreme Court of Utah.

Nov. 12, 1981.

David L. Wilkinson, James L. Barker, El-
liott Lee Pratt, Grant MacFarlane, Salt
Lake City, for petitioners.

Arthur A. Allen, Jr., Robert Gordon, F.
Robert Reeder, Salt Lake City, for respon-
dents.

STEWART, Justice:

On February 18, 1977, the Public Service
Commission issued an order granting CP
National Corp. (formerly California-Pacific
Utilities Co., and herein "CPN"),[1] an elec-
tric utility, a rate increase to provide for
53.03% of the cost of an electric transmis-
sion line. Both CPN and the protestants
sought review by this Court. CPN contend-
ed that rate increase should have provided
for 100% of the cost of the line; and the
protestants asserted there should have been

1. Subsequent to the rate proceeding, Califor-
nia-Pacific Utilities Co. changed its name to C.P. National.

no increase at all. This Court reversed the order and remanded to the Commission for further consideration because of an inconsistency in the findings and the order. *Parowan Pumpers Association v. Public Service Commission*, Utah, 586 P.2d 407 (1978). The Commission, on the basis of new findings, again allowed the same rate increase. No appeal was taken from that order. The petitioners then brought this action in the Public Service Commission for a refund of the rate increase collected subsequent to the first order. This appeal is from the Commission's denial of the refund. We affirm.

In *Parowan Pumpers* this Court held that the Commission's findings were irreconcilable with its order and set aside the order and remanded the case to the Commission to achieve "a harmonious relationship between its findings and order."[2] After additional hearings in which substantial new evidence was adduced, the Commission entered a Supplemental Report and Order which made new findings of fact supporting the same rate increase as initially allowed.[3] The validity of the second order is not disputed in this case, nor could it be. See Utah Code Ann., 1953, § 54–7–15.

Petitioners maintain that the Public Service Commission was required by the Public Utilities Act to order a refund of revenues collected pursuant to an order reversed by this Court. The contention specifically is that Sections 54–7–16 and 17 require the Commission to order a refund.[4] On a plain reading of the language of those provisions, the position is without merit. Those provisions deal only with impounding those portions of rates authorized by an order under appellate review when certain statutory conditions are complied with.

Pursuant to § 54–7–16, a party aggrieved by an order of the Public Service Commission may apply to this Court for a writ of certiorari to review a Commission order. Section 54–7–17(1) provides that the pendency of a writ does not by itself stay or suspend a PSC order; however, this Court "in its discretion may stay or suspend, in whole or in part, the operation of the commission's order or decision." An order by this Court staying or suspending a PSC order must be based on a finding of "great

---

**2.** The Court stated, 586 P.2d, at 409:

As we are unable to correlate the findings with the Commission's order, we reverse and remand the case to the Commission to take such action, including further hearings, if necessary, as it deems advisable for the purpose of achieving a harmonious relationship between its findings and order.

**3.** The February 18, 1977 findings stated that an electric service agreement between CPN and Utah Power and Light Co. was not in the public interest. The agreement required UP&L to construct a transmission line and CPN to pay the cost of construction plus certain additional amounts.

However, in the January 11, 1980 Supplemental Report and Order, the Commission stated:

"5. The electric service agreement entered between UP&L and CPN was in fact necessary for a firm supply of energy and for construction of new transmission facilities required for service to CPN's customers. That agreement was in the public interest. Expenses for construction of the new transmission line were necessary and reasonable expenses for continued electric service to CPN's Cedar City District customers. At the time the new line was energized, the existing transmission facilities were already overloaded and inadequate to provide necessary transmission. Continued service required new transmission capacity. However, the new transmission line was used to provide electric service not only to CPN's retail electric customers but also for wheeling of energy for the Bureau of Reclamation under the Wheeling Agreement referred to in the Commission's Findings. The Commission allowed CPN to cover only 53.03 percent of the transmission line expense because that was the ratio of use as between the utilities' electric customers and the wheeling of energy for the Bureau. The Commission made precisely the same allocation of expenses in the next succeeding general rate case, Case No. 77–023–08, and neither the Committee of Consumer Services nor any protestant or other party appealed that decision. The increase granted by the February 18 order was fully justified, and the rates fixed by that Order were just and reasonable rates."

**4.** No reference is made by any of the parties to U.C.A., 1953, § 54–7–20 which empowers the Commission to issue reparation orders in some circumstances, and we, therefore, refrain from commenting thereon.

or irreparable damage" to the petitioner (§ 54–7–17(2), and "a suspense bond shall first have been executed and filed . . ." (§ 54–7–17(3)). Section 54–7–17(4) specifies the duties of the parties "[i]n case the Supreme Court stays or suspends any order or decision lowering any rate, fare, toll, rental, charge or classification . . ."

Petitioners' contention that Section 54–7–17(4) requires a refund, even in the absence of a stay and a bond, is not supportable. The provision for the payment of a refund is unequivocally conditioned upon the suspension of an order, and that is only authorized if a bond is first filed. § 54–7–17(3). Contrary to petitioners' argument, *Mountain States Telephone and Telegraph v. Public Service Commission*, 107 Utah 502, 155 P.2d 184 (1945) addressed another aspect of the refund provisions, and is in no way inconsistent with the construction of the refund provisions set out above.

Petitioners did not obtain a stay and did not file a bond in *Parowan Pumpers*, and this Court did not stay the Commission's order which was the subject of that case. Accordingly, the cited sections provide no basis for relief in this case.

Petitioners also contend that, apart from the procedure outlined in the Public Utility Code for a stay and suspending bond, parties who have paid a rate determined by this Court to be unlawful are entitled to a refund from the Commission directly of the rates which were paid pursuant to the unlawful order. This Court has never ruled on that issue. But in *Mountain States Tel. & Tel. v. Public Utilities Commission*, 180 Colo. 74, 502 P.2d 945 (1972), the Colorado Supreme Court held, under statutory provisions similar to those of Utah's, that the Colorado Public Utilities Commission had the power to order a refund of revenues collected under an order held to be unlawful, irrespective of a suspension of the rates. Other courts under differing statutory schemes have held to the same effect. See *Williams v. Washington Metropolitan Area Transit Com'n.*, 134 U.S.App.D.C. 342, 415 F.2d 922 (1968); *Bebchick v. Public Utilities Commission*, 115 U.S.App.D.C. 216, 318 F.2d 187 (1963); *Northwestern Bell Telephone Co. v. Minnesota*, 299 Minn. 1, 216 N.W.2d 841 (1974); cf. *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *Louisiana Power and Light v. Louisiana Public Service Commission*, La., 377 So.2d 1023 (1979).

On the other hand, some courts have held that rates established by a regulatory body and later held unlawful by a reviewing court were lawfully collected as long as the order authorizing them was in effect, and no action could be maintained for a refund upon their being set aside. *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.*, 2 Ill.2d 205, 117 N.E.2d 774 (1954); *Keco Industries, Inc. v. The Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 141 N.E.2d 465 (1957).

Furthermore, it has been held in this and other jurisdictions that an equitable claim for restitution may be pursued in a court of law for rates paid pursuant to an unlawful regulatory commission order. See *Thermoid Western Co. v. Union Pacific Railroad Co.*, 12 Utah 2d 256, 365 P.2d 65 (1961), noted in 7 Utah L.Rev. 557 (1962); *Baltimore & Ohio R. Co. v. United States*, 279 U.S. 781, 79 S.Ct. 492, 73 L.Ed. 954 (1919).

However, we need not decide between these lines of authority. We merely remark that the issue raises difficult and complex problems concerning statutory construction, the nature of the regulatory process and procedures, and the interplay between the purposes and procedures of public utility regulation and legal and equitable remedies. Irrespective of the ultimate resolution of the power of the Commission to order a refund, we, therefore, hold that no refund may be awarded on the particular facts of this case.

Rates are not subject to refund which are based on a public utilities commission order that is defective because of a formal error in the findings and that is later corrected without changing the authorized rates. Cf. *Williams v. Washington Metropolitan Area Transit Com'n., supra.* In this case, *Parowan Pumpers* did not hold that there was a defect in the underlying

rate making proceedings. There was no error in the proper determination of revenues, expenses, rate base, or rate of return. Indeed, the Commission's second order set the same rates as those established by the first order. The defect was technical in nature in the sense that, as described by the Commission, it resulted from a "hastily issued [report produced by] the pressures of a heavy caseload of hearings and paperwork."

Under these circumstances, and assuming arguendo the power of the Commission to order a refund, it would be anomolous indeed to require a refund of rates which the Commission has twice established as lawful rates and which have never been held to be unsupportable on the merits either by the Commission or by this Court.

We recognize the existence of theoretical problems that arise from the fact that we reversed the order in *Parowan Pumpers.* Because of the reversal, the rates collected under that order were arguably unlawful, but in the circumstances of this case that is not a necessary conclusion. The essence of the decision in *Parowan Pumpers* was simply to remand for reconsideration; the reversal was at most a technicality and not based on a determination that the rates were unlawful. The rates would have been unlawful only if the Commission had, as it might have done, finally rejected the rates.

Appellants' contention that the opinion in *Parowan Pumpers* did not permit a change in the findings but only contemplated a change in the conclusion to conform with the existing findings, is without merit. The Court condemned neither the findings nor the conclusions, and simply directed the Commission to reconcile the findings and the order. Nor was the Commission precluded from taking additional evidence to reach a proper result. If the Commission thought, as it did, that additional evidence would contribute to a proper result, it was not barred from hearing such evidence, although there is nothing in this case to indicate that the Commission could not have achieved the same result without additional evidence.

The contention that the Commission's adjusted findings were arbitrary and unsupported by the evidence because they contradicted the original findings is a reiteration of the petitioners' argument that the first findings were determinative and that the Commission should have done nothing more than change the order to conform to them. As stated above, no appeal was taken from the Commission's second order, and it must be assumed that the order was lawful and the findings supporting it were valid.

Finally, petitioners contend that § 54–7–17 requiring customers to file a suspending bond is unconstitutionally burdensome because it would cost a customer more than any refund that might be obtained and therefore denies both equal protection of the laws and due process. It is also contended that the requirement of a bond discriminates against the poor.

It is a sufficient answer to the latter argument to point out that there is no evidence in this record to show the petitioners could not afford a bond; therefore, petitioners have no standing to raise the issue. See *Redwood Gym v. Salt Lake County Commission,* Utah, 624 P.2d 1138 (1981). Beyond that, the statute seeks to balance the interests of highly regulated utilities in maintaining their revenues and the rights of consumers not to be overcharged. The balance struck is clearly not irrational, even though it deals with only a part of the problem. In sum, the statutory requirement of a bond is amply justified by the presumption of constitutionality.

Affirmed.

HALL, C. J., and HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.